**STATE OF HAWAII**, Plaintiff–Appellee, v. **HWA CHA KIM**, Defendant–Appellant, and **CHONG CHA LONG**, Defendant

NO. 13545

(CR. NO. 88–0255)

JANUARY 22, 1990

LUM, C.J., PADGETT, HAYASHI, AND WAKATSUKI, JJ., AND RETIRED JUSTICE NAKAMURA, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY LUM, C.J.

Defendant–Appellant Hwa Cha Kim (Kim) appeals her conviction for Promoting a Dangerous Drug in the Second Degree, Hawaii Revised Statutes (HRS) § 712–1242(1)(c) (1985). In this appeal, Kim claims that the trial court erred by refusing to grant an instruction to the jury on the procuring agent defense and refusing

to give a "special verdict" form to the jury which would have asked the jury if a "sale" of cocaine had transpired.

We held in *State v. Kelsey*, 58 Haw. 234, 566 P.2d 1370 (1977), that the procuring agent defense is unavailable against a charge of knowingly and unlawfully distributing a dangerous drug. We see no reason to overrule *Kelsey*, and we accordingly affirm Kim's conviction.

## I.

Undercover agents Hood and Thomas of the United States Naval Investigative Service entered the My Way Lounge on Hotel Street on December 3, 1986, to investigate possible narcotics trafficking to Navy personnel. They purchased drinks from Kim and another hostess. Special Agent Hood testified that Kim grabbed his nose and said, "Bet you like to do this," which he took to be a suggestion that he used cocaine. Kim told Hood she could obtain cocaine for him, and asked if he wanted, "a half gram or what?"

Later that evening, Hood told Appellant he wanted a gram. Kim replied that she could get it for him and that the price would be $120. After the other hostess took Hood and Thomas to a booth farther back in the lounge, Hood gave Kim $120 in police funds. Hood watched Kim walk to the other end of the bar and give the money to an unidentified male. Kim returned some twenty minutes later and gave Hood a napkin containing two paper bindles, which she said contained cocaine. Hood stated that Kim told him he should deal only with her in the future to purchase cocaine.

The substance contained in the bindles was analyzed the following day and found to be .95 grams of cocaine. The napkin, bindles and cocaine were introduced as evidence at trial. Hood testified that the transaction was a sale of cocaine, and that Kim had taken the money, given it to the male and then given Hood the cocaine. Special Agent Thomas essentially corroborated Hood's testimony.

After the State presented its evidence, Kim moved for a judgment of acquittal, contending that the State's evidence had proved only a sale of cocaine and the procuring agent defense was available to the defendant. The court denied the motion, holding that where the defendant had not moved for a bill of particulars and the State was not thereby required to prove a specific charge of selling narcotics, the procuring agent defense was not available.

Kim recounted a very different version of what transpired. She testified that on the night in question, she told Special Agent Hood that she did not sell cocaine and did not know who did, but would ask the owner. She conveyed the request to the owner, who told her the price was $60, and she relayed the message to Hood. Hood gave her some money, and she gave it to the owner without counting it. She went back to the bar on the owner's order, and a few minutes later he came over and gave her a napkin. She brought the napkin to Hood. Kim testified that she knew the napkin "maybe [contained] cocaine." However, she denied touching Hood's nose, and denied telling him he looked like he took cocaine, that she could get it for him, and to buy cocaine only through her.

The court's instruction on the "distribution" element of Promoting a Dangerous Drug in the Second Degree was as follows:

> To distribute means to sell, transfer, prescribe, give, or deliver to another, or to leave, barter, or exchange with another, or to offer or to agree to do the same.
>
> To sell means to transfer to another for consideration.

The court refused Kim's proposed jury instruction on the procuring agent defense, which was as follows:

> If you find that there was sale of a dangerous drug the law provides that one who acts as the agent of the buyer to effect a purchase of a drug with the buyer's funds does not commit the offense of selling the drug.

The trial court also refused to submit a special interrogatory that would have asked the jury whether, if they found Kim guilty of the charge, a sale had occurred. The jury returned a guilty verdict, and Kim appeals.

## II.

By arguing that she was entitled to have the jury consider the defense of procuring agent against a charge of distributing a dangerous drug, Kim is asking us to overturn *State v. Kelsey*, 58 Haw. 234, 566 P.2d 1370 (1977). *Kelsey* also concerned a trial court's refusal to instruct on the procuring agent defense. On facts very similar to the case at bar, based upon our reading of the pertinent provisions of the Hawaii Penal Code, we joined those jurisdictions which have rejected the procuring agent defense. *Kelsey*, 58 Haw. at 240, 566 P.2d at 1374.

Our decision in *Kelsey* was based upon a sound interpretation of the statutory treatment of drug offenses. As we observed in *Kelsey*, the state legislature "drastically amended" the law on drug trafficking with the adoption of the Hawaii version of the Model Penal Code revision in 1972. *Kelsey*, 58 Haw. at 240, 566 P.2d at 1373. *See* Act 9, 1972 Haw. Sess. Laws 132, *et seq*. The former statute, HRS Chapter 329, prohibited the "sale" of dangerous drugs and, in the case of narcotics, distinguished between sale or possession with intent to sell, and simple possession. *See* Commentary on HRS §§ 712–1241 to –1250. The revision expanded the proscription to include any "distribution" of a dangerous drug in any amount. HRS § 712–1242(1)(c) (1972). "Distribution" was defined broadly: "[T]o sell, transfer, prescribe, give, or deliver to another, or to leave, barter, or exchange with another, or to offer or agree to do the same." HRS § 712–1240 (1985). In light of the legislature's expansion of the proscription to all means of "distribution," the court in *Kelsey* concluded that the procuring agent defense "would

be inapplicable against a charge of knowingly and unlawfully distributing a dangerous drug in violation of Section 1242(1)(c) of the Code." *Kelsey*, 58 Haw. at 240, 566 P.2d at 1373–74. The present case concerns the same statutory section, and *Kelsey* has never been overruled or modified.

Appellant's reliance on *State v. Erickson*, 60 Haw. 8, 586 P.2d 1022 (1978) (per curiam), is misplaced. In *Erickson*, the defendant was charged with Promoting a Detrimental Drug in the First Degree in violation of HRS § 712–1247(1)(f). The trial court ordered a bill of particulars to specify, among other things, what acts constituted "distribution" under the statute. The bill charged that the defendant sold marijuana to an undercover police officer. We held that under those circumstances, the charge could not be proved by evidence of any act other than a sale: "After a bill of particulars is ordered furnished and is filed by the State and until it is properly amended, the State is limited to proving the particulars specified in the bill." *Erickson*, 60 Haw. at 9, 586 P.2d at 1023. We went on to accept the procuring agent defense where a sale is charged, but we specifically distinguished the case from *Kelsey* by explaining:

> In *Kelsey*, the defendant was charged with the knowing and illegal distribution of a dangerous drug. That charge permitted proof of any act which fell within the statutory definition of "distribute" contained in HRS Sec. 712–1240(11). As a consequence, although the evidence showed that the defendant had not acted for himself but for an undercover police agent, he was not entitled to a judgment of acquittal.

*Erickson*, 60 Haw. at 10–11, 586 P.2d at 1024. Thus, we expressly limited our holding in *Erickson* to cases in which a bill of particulars limits the State to proving "distribution" by an exchange for consideration.

The lower court's reading of *Erickson* was quite correct. If defense counsel intended to rely upon *Erickson*, it was incumbent

upon counsel to move for a bill of particulars prior to trial, which the court may grant in its discretion. Rule 7(g), Hawaii Rules of Penal Procedure; *cf. State v. Harper,* 1 Haw. App. 481, 620 P.2d 1087 (1980).

We reiterate our holding in *Kelsey* that the procuring agent defense is unavailable to a charge of promoting a dangerous drug. Kim was therefore not entitled to a jury instruction or special interrogatory on that theory, and the judgment of the lower court is affirmed.

*Jonathan Ezer (Alvin T. Sasaki* on the brief) for Defendant–Appellant.

*Vickie L. Silberstein,* Deputy Prosecuting Attorney, for Plaintiff–Appellee.