1 P.3d 281

STATE of Hawai'i, Plaintiff–Appellee,

v.

Robert BALANZA, Defendant–Appellant,

and

Albert Brady aka Charles Stepps,

and

Ricky Moore, Defendants.

No. 22146.

Supreme Court of Hawai'i.

June 2, 2000.

T. Stephen Leong, Honolulu, and Brian B. Custer, Volcano, on the briefs, for defendant-appellant.

Caroline M. Mee, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ., and Circuit Judge RAFFETTO *, Assigned by Reason of Vacancy.

Opinion of the Court by NAKAYAMA, J.

Defendant-appellant Robert Balanza appeals his conviction of one count of promoting a dangerous drug in the second degree (Count I), in violation of Hawai'i Revised Statutes (HRS) § 712–1242(1)(c) (1993), one count of unlawful use of drug paraphernalia (Count II), in violation of HRS § 329–43.5(a)

---

* Acting Associate Justice Raffetto was assigned by reason of the vacancy created by the resignation of Justice Klein, effective February 4, 2000. On May 19, 2000, Simeon R. Acoba, Jr. was sworn-in as associate justice of the Hawai'i Supreme Court. However, Acting Associate Justice Raffetto remains on the above-captioned case, unless otherwise excused or disqualified.

(1993), and one count of promoting a dangerous drug in the third degree (Count III), in violation of HRS § 712–1243 (1993 & Supp. 1998). On appeal, Balanza contends that the trial court erred in denying: (1) his motion to dismiss Count III as a de minimis offense; (2) his request for a jury instruction on the procuring agent defense; and (3) his motion to sever Count I from Counts II and III. We hold that, under the facts of this case, Balanza was entitled to a jury instruction on the procuring agent defense and that there was insufficient evidence supporting Balanza's conviction of Count I. Therefore, we reverse his conviction of Count I and remand the case for entry of a judgment of acquittal on that count. We affirm his convictions of Count II and Count III.

## I. BACKGROUND

On June 4, 1996, Honolulu Police Department (HPD) police officer John Torres, Jr. and another officer were assigned to conduct surveillance in the area of Seaside and Kuhio Avenues in Waikīkī based on anonymous reports of drug activity. Officer Haina testified that they observed three men, later identified as Balanza and codefendants Albert Brady and Ricky Moore, speaking to each other during that time. Although the officers had not identified anyone as a suspect, Officer Rick Orton was sent in undercover to attempt to purchase drugs.

As Officer Orton approached the area, Moore walked past him. Orton passed Brady, who was sitting on a planter, and approached Balanza, who was sitting on another planter. When Orton made eye contact, Balanza said, "Howzit." Orton returned the greeting and asked where he could buy drugs. Balanza asked Orton what he wanted and Orton indicated that he wanted rock cocaine. Balanza then asked Orton if he was a police officer; Orton said that he was not and asked Balanza if he was a police officer. Balanza said that he was not, and then pointed toward Brady and Moore, who were standing together, and said, "He get[.]" Balanza called out to Moore and motioned for

him to come over. Balanza told Moore, "He like pick up."

Moore asked Orton how much money he had and Orton said that he had sixty dollars. Moore went back to where Brady was sitting and returned with three small pieces of rock cocaine. When Orton took out his money, Brady called out to them and told them to wait. Brady then came over, took two pieces from Moore, and put them into Orton's hand. Moore put the other piece in Orton's hand. Brady took the money and walked away; Moore followed. At no time did Balanza handle the purchase money or the cocaine. Orton signaled to the other officers that he had bought the drugs.

After Brady and Moore left, Balanza told Orton that he wanted to smoke the "small rock." Orton said that he did not have a pipe, but Balanza replied, "I got a pipe." Orton said, "No," and walked away. Officer John Haina apprehended Balanza. Balanza was arrested after Orton arrived and identified him. In a search incident to arrest, Haina discovered a glass pipe in Balanza's pocket. The pipe had a residue in it and was of the type commonly used for smoking crack cocaine. An HPD criminalist later extracted the residue with a solvent and determined that the residue weighed 0.004 grams and contained cocaine.

On July 17, 1997, the grand jury indicted Balanza, Brady, and Moore on one count of promoting a dangerous drug in the second degree based upon the transaction with Officer Orton. The grand jury also indicted Balanza on one count of unlawful use of drug paraphernalia and one count of promoting a dangerous drug in the third degree based upon his possession of the pipe and the cocaine residue. On September 16, 1997, Balanza filed a motion to sever Count I from Counts II and III because they arose from separate conduct and would create a risk of a compromise verdict.[1] Balanza also filed a motion for a bill of particulars. The court denied both motions.

On October 10, 1997, Balanza moved to have the charges against him dismissed as de minimis offenses. He argued that Count I

---

1. Balanza's motion also requested severance from Moore and Brady. However, on appeal, Balanza does not contest the trial court's ruling on the joinder of defendants.

should be dismissed because he only helped the undercover agent locate drugs to purchase and that this was de minimis because his conduct "[d]id not actually cause or threaten the harm or evil to be prevented" by HRS § 712–1242(1)(c). As to Counts II and III, Balanza argued that the amount of cocaine in the pipe was "microscopic, infinitesimal and unusable as a narcotic." The court also denied this motion.

The case proceeded to trial before a jury. At the close of the prosecution's case, Balanza moved for a judgement of acquittal on all counts. He argued that he should be acquitted of Count I based on the procuring agent defense, Count II based on insufficient evidence, and Count III based on insufficient evidence and because, even if proved, it merely constituted a de minimis infraction. The trial court denied his motion as to Count I and as to Counts II and III based on sufficiency of the evidence; the court reserved ruling on the de minimis issue. During the settlement of the jury instructions, the trial court refused to give the procuring agent defense instruction requested by defense counsel. The jury convicted Balanza on all counts.[2]

Balanza moved for a judgment of acquittal or a dismissal based on de minimis infractions or a new trial. A hearing on the motion was held on November 20, 1998; the court denied the motion in its entirety and sentenced Balanza to five years' probation on each count, subject to a special condition that Balanza serve one year of imprisonment. This appeal followed. On appeal, Balanza argues that: (1) Count III should have been dismissed as a de minimis offense; (2) he was entitled to a procuring agent instruction as to Count I; and (3) he was entitled to separate trials for Count I and Counts II and III.

## II. DISCUSSION

### A. Standard of review

Before a trial court can address whether an offense constitutes a de minimis infraction, the court must make factual deter-

minations regarding the circumstances of the offense; these findings of fact are reviewed under the clearly erroneous standard. *State v. Viernes*, 92 Hawai'i 130, 133, 988 P.2d 195, 198 (1999). The court must then decide whether to dismiss the charge as a de minimis offense under the circumstances established in the findings of fact. The court's ruling is reviewed under the abuse of discretion standard. *Id.* A court abuses its discretion "'if the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" *Id.* (quoting *State v. Ornellas*, 79 Hawai'i 418, 420, 903 P.2d 723, 725 (App.1995)).

The standard of review for a trial court's issuance or refusal of a jury instruction is "'whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading[.]'" *State v. Sua*, 92 Hawai'i 61, 69, 987 P.2d 959, 967 (1999) (quoting *State v. Cabrera*, 90 Hawai'i 359, 364–65, 978 P.2d 797, 802–03 (1999)) (some citations omitted). "'[V]erdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the [trier of fact's] findings. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion.'" *Id.*, (quoting *Aga v. Hundahl*, 78 Hawai'i 230, 237, 891 P.2d 1022, 1029 (1995)) (some citations and internal quotation marks omitted).

In considering a motion to sever charges, the trial court must weigh the potential prejudice to the defendant against the interests of judicial efficiency. The court's decision will not be reversed absent a clear showing of abuse of discretion. *State v. Timas*, 82 Hawai'i 499, 512, 923 P.2d 916, 929 (App.1996).

### B. The trial court did not err in concluding that the amount of cocaine Balanza possessed did not constitute a de minimis infraction.

Balanza argues that the trial court

---

2. Moore pled no-contest and Brady was convicted as charged under Count I. Brady's conviction was summarily affirmed in a separate appeal.

*State v. Brady*, 92 Hawai'i 631, 994 P.2d 563 (1999) (Table).

erred in denying his post-trial motion[3] to dismiss Count III because the amount of cocaine found in the pipe constituted only a de minimis infraction. HRS § 702–236 (1993) provides:

> (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:
>
> . . . .
>
> (b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[.]

Balanza argues that the following facts should have led the trial court to dismiss Count III pursuant to HRS § 702–236:(1) the amount allegedly possessed by him was a trace amount; (2) he was unaware that he possessed any useable amount; and (3) the amount was in fact unusable.

We have previously rejected the same arguments Balanza raises in *State v. Viernes*, 92 Hawai'i 130, 988 P.2d 195 (1999), which addressed a de minimis violation of HRS § 712–1243 (1993 & Supp.1998).[4] In *Viernes*, we stated:

> HRS § 702–236 provides that an offense may be de minimis where it "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense[.]" Under certain circumstances, this may, as *[State v. ]Vance* [, 61 Haw. 291, 602 P.2d 933 (1979) ] suggests, trump the "any amount" requirement of HRS § 712–1243. The legislative purpose of the penal statutes relating to drugs and intoxicating compounds—including HRS § 712–1243—is to respond to "abuse and social harm." Hse. Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1040. The legislature increased the penalties attendant to the possession or distribution of

methamphetamines "to counter increased property and violent crimes." 1996 Haw. Sess. L. Act 308, at 970. As *Vance* suggests, however, if the quantity of a controlled substance is so minuscule that it cannot be sold or used in such a way as to have any discernible effect on the human body, it follows that the drug cannot lead to abuse, social harm, or property and violent crimes. Accordingly, "proscription of possession under these circumstances may be inconsistent with the rationale of the statutory scheme of narcotics control. *Vance*, 61 Haw. at 307, 602 P.2d at 944.

In the present matter, the quantity of the drug at issue was "infinitesimal and in fact unusable as a narcotic." *See id.* It is uncontested that the substance possessed by Viernes weighed .001 grams and contained methamphetamine. Even assuming, arguendo, that the .001 grams consisted of pure methamphetamine, Viernes adduced uncontroverted evidence that .001 grams of methamphetamine (1) could not produce any pharmacological action or physiological effect and (2) was not saleable. Inasmuch as the .001 grams of methamphetamine was infinitesimal and was neither useable nor saleable, it could not engender any abuse or social harm. As such, Viernes's possession of the .001 grams of methamphetamine did not threaten the harm sought to be prevented by HRS § 712–1243. Accordingly, the circuit court did not abuse its discretion in determining that .001 grams of methamphetamine was de minimis pursuant to HRS § 702–236.

It should be noted that, in so holding, this court should not be seen as contradicting *Vance* and applying a "usable quantity standard" to HRS § 712–1243. As pointed out in *Vance*, the determination of the amount of a drug necessary to constitute an offense falls solely within the purview of the legislature. The present holding

---

3. In his opening brief, Balanza argues that the trial court erred in denying his pretrial motion to dismiss Count III on de minimis grounds. However, in light of the fact that he relies on the evidence adduced at trial to support his position, he is clearly contesting the trial court's denial of his post-trial motion for judgment of acquittal or,

in the alternative, for dismissal on de minimis grounds.

4. HRS § 712–1243(1) (1993) states: "A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount."

would merely recognize, as *Vance* suggests, that conduct may be so harmless that, although it technically violates HRS § 712–1243, it is nonetheless de minimis pursuant to HRS § 702–236.

*Id.* at 134–35, 988 P.2d at 199–200.

*Viernes* reaffirms our position taken in *Vance* that the application of HRS § 702–236 to the drug laws is not governed solely by a "useable quantity" standard. Further, in *Viernes,* the defendant adduced uncontroverted evidence that the amount in question could not produce any pharmacological action or physiological effect and was not saleable. In contrast, in the present case, the prosecution adduced substantial evidence that the cocaine residue[5] in the pipe was visible to the naked eye and could be scraped out and smoked again. The defense attempted to adduce testimony to the contrary, but the trial court determined that the proffered testimony was inadmissible. Thus, Balanza's expert witness never had the opportunity to testify that the cocaine residue could not be reused.

Based on the evidence adduced at trial, the trial court did not abuse its discretion in ruling that Balanza's infraction of HRS § 712–1243 was not de minimis within the meaning of HRS § 702–236. The trial court did not err denying Balanza's motion to dismiss Count III.

## C. The trial court should have instructed the jury on the procuring agent defense.

▮▮▮ Balanza argues that the trial court erred in refusing to instruct the jury on the procuring agent defense, which he sought to invoke against Count I, promoting a dangerous drug in the second degree.[6] The principle behind the procuring agent defense is that "one who acts merely as a procuring

agent for the buyer is a principal in the purchase, not the sale, and, therefore, can be held liable only to the extent that the purchaser is held liable." *State v. Reed,* 77 Hawai'i 72, 79, 881 P.2d 1218, 1225 (1994). Balanza argues that the procuring agent defense should have been available to him because he helped Officer Orton to find a seller and did not participate in the actual sale. He further argues that, had the jury been instructed on the procuring agent defense, he would not have been convicted of Count I.

### 1. Procuring agent defense under Hawai'i case law

Prior to the adoption of the Hawai'i Penal Code in 1972, Hawai'i drug trafficking laws primarily criminalized the sale of dangerous drugs. In contrast, the Penal Code focuses on the "distribution" of drugs. *See Reed,* 77 Hawai'i at 79, 881 P.2d at 1225. In *State v. Kelsey,* 58 Haw. 234, 566 P.2d 1370 (1977), we held that the procuring agent defense is not available to a defendant charged with promoting a dangerous drug. However, in *State v. Erickson,* 60 Haw. 8, 586 P.2d 1022 (1978), we held that the procuring agent defense was available where a bill of particulars limited the prosecution to proving distribution through a sale.

In *State v. Kim,* 71 Haw. 134, 785 P.2d 941 (1990), we reiterated the holding in *Kelsey* and emphasized that a defendant who intends to rely on *Erickson* must move for a bill of particulars. Because Kim had not moved for a bill of particulars, she was not entitled to a jury instruction on the procuring agent defense. In *State v. Reed,* the defendant requested a bill of particulars, but his motion was denied. 77 Hawai'i at 78, 881 P.2d at 1224. We held that the trial court did not abuse its discretion in denying the motion because Reed received sufficient no-

---

**5.** At trial, defense witness Mark Hagadone, Ph. D., testified that his tests indicated that the residue was approximately 95% pure cocaine. Therefore, approximately 0.0038 grams of the residue was cocaine.

**6.** HRS § 712–1242 states:

(1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:

. . . .

(c) Distributes any dangerous drug in any amount.

HRS § 712–1240 (1993) provides that " '[t]o distribute' means to sell, transfer, prescribe, give, or deliver to another, or to leave, barter, or exchange with another, or to offer or agree to do the same."

tice of the charges against him and the information available to him was sufficient to enable him to prepare a defense and to prevent unfair surprise. Therefore, based on *Kelsey* and *Kim*, we held that the trial court did not err in refusing to instruct the jury on the procuring agent defense.

▮ The procuring agent defense remains available where the defendant is charged with the sale of drugs. The Intermediate Court of Appeals in *State v. Rullman*, 78 Hawai'i 488, 896 P.2d 944 (App. 1995), held that the procuring agent defense was available to a defendant charged with violating HRS § 712–1247(1)(h) (1993), which specifies "[s]ells or barters any marijuana . . . in any amount." Further, in *State v. Aluli*, 78 Hawai'i 317, 893 P.2d 168 (1995), we reversed the defendant's conviction of promoting a dangerous drug in the second degree, holding that the act of buying is not included in distributing. Aluli had been convicted of attempting to purchase cocaine from an undercover police officer.

## 2. Procuring agent defense in the present case

▮ Under the existing case law, the procuring agent defense was not available to Balanza because there was no bill of particulars limiting the prosecution to proving distribution through a sale. On appeal, Balanza does not argue that the trial court erred in denying his motion for a bill of particulars. Instead, he argues

> defense counsel meticulously went through all applicable, statutorily required verbs and [Officer Orton] systematically denied that the defendant had done any of the statutorily defined acts constituting distribution and/or sales. The legal significance of defense counsel's questioning is that, as required by *Erickson*, Balanza established the equivalent of [a] bill of particulars as a perquisite to using the procuring agent defense. . . .

Opening brief at 11.

Balanza's argument that the cross-examination of one prosecution witness has the same effect as a bill of particulars is unpersuasive. In submitting a bill of particulars,

the prosecution limits itself to proving its case in the manner stated in the bill. The testimony of a single prosecution witness cannot bind the prosecution in a similar manner. In spite of Orton's testimony, the prosecution was free to prove its case by showing that Balanza participated in any of the acts included in the distributing requirement.

▮ Even though Balanza does not raise the issue on appeal, we may review the trial court's denial of the motion for a bill of particulars under the plain error standard. "We may recognize plain error when the error committed affects substantial rights of the defendant." *Sua*, 92 Hawai'i at 69, 987 P.2d at 967 (quoting *State v. Staley*, 91 Hawai'i 275, 282, 982 P.2d 904, 911 (1999)) (some citations omitted). A trial court has the discretion to order a bill of particulars, and it must exercise this discretion in consideration of the purpose of a bill of particulars, which is to help the defendant prepare for trial and to prevent surprise. *Reed*, 77 Hawai'i at 78, 881 P.2d at 1224. Further, a trial court cannot consider the fact that ordering a bill of particulars may open the door to the procuring agent defense. *Id.* at 80, 881 P.2d at 1226.

We have previously held that, " '[w]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient.' " *State v. Moore*, 82 Hawai'i 202, 216, 921 P.2d 122, 136 (1996) (quoting *State v. Jendrusch*, 58 Haw. 279, 283, 567 P.2d 1242, 1245 (1977)). HRS § 712–1242 provides:

> (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:
>
> . . . .
>
> (c) Distributes any dangerous drug in any amount.

HRS § 712–1242 is readily comprehensible to persons of common understanding. Balanza's indictment charged that he "did knowingly distribute the dangerous drug cocaine, thereby committing the offense of Pro-

moting a Dangerous Drug in the Second Degree...." Because the indictment was drawn according to the language of the statute and the statute is readily comprehensible to persons of common understanding, the indictment was sufficient. The trial court did not commit plain error by denying Balanza's motion for a bill of particulars. Thus, under the existing case law, because there was no bill of particulars, the procuring agent defense was not available to Balanza.

However, the facts of the present case illustrate the unduly harsh results of the rule established in *Kim*. In *Erickson* we held that the procuring agent defense was applicable where there was a bill of particulars limiting the prosecution to proving distribution through a sale. In *Kim*, and in *Reed* which applied *Kim*, we held that a bill of particulars is a *necessary condition* to the invocation of the procuring agent defense. In light the facts of this case, we believe that, in determining whether the procuring agent defense is available to a defendant, the emphasis should be on the evidence adduced at trial, and should not depend solely on whether there was a bill of particulars.[7] Where there is a bill of particulars limiting the prosecution to proving distribution through a sale, the evidence adduced at trial will necessarily establish only a sale. However, defendants who are unable to obtain a bill of particulars should also be able to invoke the procuring agent defense where warranted by the evidence adduced at trial.

In *Kim* and *Reed*, the respective trial courts were correct, based on the evidence adduced at trial, to refuse a procuring agent instruction. In *Kim*, an undercover agent went to a Hotel Street lounge to investigate alleged drug trafficking. According to the agent's testimony, Kim approached him, stated that she thought he used cocaine, and asked if he would like her to obtain some for him. The agent asked her to obtain a gram

and she said the price would be $120. Kim accepted the money and returned with the cocaine. The agent also testified that Kim said in the future he should buy cocaine only from her. 71 Haw. at 135, 785 P.2d at 941–42. Kim denied many of the events described by the agent, but admitted to accepting the money from him and delivering a napkin which she knew "maybe [contained] cocaine." *Id.* at 136, 785 P.2d at 942.

In *Reed*, the defendant participated in three drug transactions with an undercover police officer. In the first transaction, Reed negotiated the terms of the deal with the officer, took the officer's money, and delivered the cocaine to him. Reed asked the officer for some of the cocaine; the officer refused but gave Reed a fifteen dollar tip. In the second transaction, Reed told the officer to go to a certain hotel where the officer was met by Peralta, who said he worked with Reed. Peralta and the officer negotiated a purchase price and quantity. Reed eventually delivered the cocaine to the officer, who tipped Reed twenty dollars. In the final transaction, the officer said that he wanted to purchase four grams of cocaine for $400. Reed accepted the money and delivered one gram, stating that it was all he had in his immediate possession and that he would have to go elsewhere to obtain the other three grams. He then left and returned about an hour later with the other three grams. Reed admitted to providing the officer with cocaine, but claimed that he only did so because the officer pressured him to do so.

Under the evidence adduced in *Kim* and *Reed*, a reasonable juror could have found that the defendants were, at a minimum, acting on behalf of the sellers. However, in the present case, Balanza did not participate in the negotiation of the purchase price and quantity, nor did he come into

---

7. Our research found no other jurisdiction that requires the defendant to obtain a bill of particulars as a necessary condition to invoking the procuring agent defense. In *Commonwealth v. Simione*, 447 Pa. 473, 291 A.2d 764 (1972), the Pennsylvania Supreme Court adopted the same rule we adopted in *Erickson*. However, no subsequent case applied *Simione* to require a bill of particulars before a defendant could utilize the procuring agent defense. In *State v. Cote*, 444 A.2d 34 (Maine 1982), the Maine Supreme Court, after having held that the trial court had properly denied the defendant's motion for a bill of particulars, held that the trial court did not err in refusing to instruct the jury on the procuring agent defense because "the jury could have found that the defendant ... had acted as an accomplice of the sellers." *Id.* at 37.

physical contact with the money or the cocaine. Under these circumstances, the procuring agent defense should have been available to him.

 We hold that, in the absence of a bill of particulars, where the evidence adduced at trial proves only a sale and a reasonable juror could find that the defendant did not act on the seller's behalf, the defendant is entitled to a jury instruction on the procuring agent defense. To the extent that *State v. Kim* and *State v. Reed* are inconsistent with today's holding, they are overruled. In the present case, the evidence adduced at trial proved only a sale and a reasonable juror could have found that Balanza did not act on the seller's behalf. The trial court should have instructed the jury on the procuring agent defense. Further, we also hold that the evidence adduced at trial did not support an inference that Balanza was acting on behalf of the seller in promoting the sale of cocaine. There was insufficient evidence to support Balanza's conviction of promoting a dangerous drug in the second degree. *See Erickson*, 60 Haw. at 11, 586 P.2d at 1024. Therefore, we reverse Balanza's conviction of promoting a dangerous drug in the second degree.

**D. The trial court did not err in refusing to sever Count I from Counts II and III.**

 Balanza argues that the trial court erred in denying his motion to sever Count I from Counts II and III because they were based upon different facts and because the jury might have convicted him for one offense based upon his involvement in the other. On September 16, 1997, Balanza filed a motion for relief from improper and prejudicial joinder under Hawai'i Rules of Penal Procedure (HRPP) Rules 8 and 14 (1997). After a hearing on October 7, 1997, the court orally denied the motion. The ruling was entered in an order dated October 16, 1997.

 The record on appeal contains no indication that Balanza renewed his motion for severance either at the close of the prosecution's case or at the close of all evidence.[8] We have previously ruled that a failure to renew a pretrial motion for severance waives the claim. *State v. Hilongo*, 64 Haw. 577, 579, 645 P.2d 314, 316 (1982) (citing *State v. Matias*, 57 Haw. 96, 99–100, 550 P.2d 900, 902–03, (1976)). This is due in part to the difficulty of making a finding of prejudice before trial. *Matias*, 57 Haw. at 98, 550 P.2d at 902. Insofar as Balanza did not renew his motion for severance at the close of the prosecution's case or at the close of all evidence, his claim of error on this point was waived.

 However, assuming *arguendo* that this point was properly preserved for appeal, the trial court did not err in denying Balanza's motion for severance. HRPP Rule 8(a) (1998) provides:

> Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses:
>
> . . . .
>
> (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Where joinder is proper under Rule 8, subsequent severance is governed by HRPP Rule 14, which states:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in a charge or by such joinder for trial together, the court *may* order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

(Emphasis added.) The decision to sever is in the sound discretion of the trial court; a defendant is not entitled to a severance as a matter of right. *Matias*, 57 Haw. at 98, 550

8. On March 30, 1998, Balanza filed a motion in liminie renewing his motion to sever and the trial court orally denied the motion. The trial began on March 31. In Balanza's motion for judgment of acquittal or in the alternative dismissal based upon de minimis infraction or in the alternative motion for new trial, filed on April 14, 1998, he argued that "[t]he court should consider granting defendant's motion [for new trial], in the interests of justice, due to ... the failure to sever counts...." However, this is not the equivalent of renewing his motion for severance.

P.2d at 902. After a motion is brought under HRPP Rule 14, the trial court must weigh the possible prejudice to the defendant against the public interest in judicial economy. *Timas,* 82 Hawai‘i at 512, 923 P.2d at 929.

█ In denying Balanza's motion for severance, the trial court found that "[t]he offenses that Balanza is charged with are based on a series of acts connected together, and therefore joinder of charges is proper under [HRPP] Rule 8(a)(2)[.]" Count I and Counts II and III were based upon two related incidents. Balanza first, with Brady and Moore, allegedly distributed three pieces of rock cocaine to Officer Orton. Then Balanza allegedly asked Orton if he could smoke one of those pieces in a pipe, found on Balanza, which already contained cocaine residue. The court did not abuse its discretion in finding that these incidents were a connected series of acts.

█ The trial court's order did not include a finding regarding the HRPP Rule 14 balancing. However, this error was harmless because the result was correct. One of the factors the trial court may consider in the Rule 14 balancing is whether substantially the same witnesses would testify at the separate trials if severance were granted. *State v. Miyazaki,* 64 Haw. 611, 623, 645 P.2d 1340, 1349 (1982). If Count I had been severed from Counts II and III, substantially the same witnesses would have testified at each trial. Balanza's individual encounter with Officer Orton arose from the "buy bust" involving the three defendants, and the pipe was discovered when Balanza was searched incident to his arrest for his participation in the "buy bust."

█ On appeal, Balanza argues that:

The key issue ... was the jury's potential to use the introduction of evidence pertaining to his alleged possession of the drug pipe and the residue found therein ... to infer a criminal disposition on Balanza's part as an accomplice in the alleged sale of the drugs to the undercover officer or vice versa.

Opening brief at 13. There may have been a minimal amount of potential prejudice in the joinder of the counts. However, such prejudice was effectively dispelled by the trial court's jury instruction that:

Defendant Robert Balanza is charged with more than one offense under separate counts in the indictment. Each count and the evidence that applies to that count is to be considered separately. The fact that you may find Defendant Robert Balanza not guilty or guilty of one of the counts charged does not mean that you must reach the same verdict with respect to any other count charged.

A jury is presumed to have followed the court's instructions. *State v. Jhun,* 83 Hawai‘i 472, 482, 927 P.2d 1355, 1365 (1996). Thus, the possible prejudice to Balanza was outweighed by the public interest in judicial efficiency. We hold that the trial court did not abuse its discretion in denying Balanza's motion for severance.

### III. CONCLUSION

For the forgoing reasons, we affirm Balanza's convictions of Counts II and III and reverse his conviction of Count I. We remand the case with instructions to enter a judgment of acquittal as to Count I.