68 P.3d 635

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Grant T. SUGIHARA, Defendant–Appellant.**

**No. 24584.**

Intermediate Court of Appeals of Hawai'i.

April 2, 2003.

James S. Tabe, Deputy Public Defender, State of Hawai'i, on the briefs, for defendant-appellant.

Mark Yuen, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by LIM, J.

Grant T. Sugihara (Sugihara) appeals the August 31, 2001 judgment of the family court of the first circuit, the Honorable Steven S. Alm, judge presiding, that convicted him of the offense of violation of an order for protection. Hawaii Revised Statutes (HRS) §§ 586–5.5 (Supp.2000) & 586–11 (Supp.

2002).[1] The State had alleged that on May 3, 2001, Sugihara violated an order for the protection of his ex-wife, by showing up unexpectedly at the townhouse where she and two of their minor children reside.[2]

Relying upon the Hawai'i Supreme Court's opinion in *State v. Aganon,* 97 Hawai'i 299, 36 P.3d 1269 (2001), Sugihara argues, for the first time on appeal, that the family court's jury instruction on the offense was erroneous and invites us, by way of purported prejudice, to notice plain error. We decline, and affirm.

## I. Background.

The family court instructed the jury on the offense of violation of an order for protection, as follows:

> In Count II of the Complaint,[3] Defendant GRANT T. SUGIHARA is charged with the offense of Violation of An Order for Protection.
>
> A person commits the offense of Violation of An Order for Protection if he intentionally or knowingly engages in conduct which is prohibited by an Order for Protection issued by a Judge of the Family Court, and the Defendant was present at the hearing in which the Order for Protection was issued or was personally served, and the Order for Protection was in effect at the time of the prohibited conduct.
>
> There are four material elements of the offense of Violation of An Order for Protection, each of which the prosecution must prove beyond a reasonable doubt.

These four elements are:

1. That on or about May 3, 2001, on the island of Oahu, an Order for Protection issued by a Judge of the Family Court prohibiting the Defendant from engaging in certain conduct was in effect; and

2. That the Defendant was present at the hearing in which the Judge of the Family Court issued the Order for Protection or was personally served with a copy of the Order for Protection prior to May 3, 2001; and

3. That the Defendant engaged in conduct which was prohibited by the Order for Protection; and

4. That the Defendant engaged in said conduct intentionally or knowingly.

A person acts intentionally with respect to his conduct when it is his conscious object to engage in such conduct.[4]

A person acts intentionally with respect to attendant circumstances when he is aware of the existence of such circumstances or believes or hopes that they exist.

A person acts intentionally with respect to a result of his conduct when it is his conscious object to cause such a result.

A person acts knowingly with respect to his conduct when he is aware that his conduct is of that nature.

A person acts knowingly with respect to attendant circumstances when he is aware that such circumstances exist.

1. Hawaii Revised Statutes (HRS) § 586–5.5 (Supp.2000) provided, in pertinent part: "If after hearing all relevant evidence, the court finds that the respondent has failed to show cause why the [temporary restraining order entered upon the filing of a petition for an order for protection pursuant to HRS § 586–3 (1993 & Supp.2002)] should not be continued and that a protective order is necessary to prevent domestic abuse or a recurrence of abuse, the court may order that a protective order be issued for such further period as the court deems appropriate, not to exceed three years from the date the protective order is granted." HRS § 586–11 (Supp.2002) provides, in relevant part: "Whenever an order for protection is granted pursuant to this chapter, a respondent or person to be restrained who knowingly or intentionally violates the order for protection is guilty of a misdemeanor."

2. The January 13, 2000 order for protection prohibited Defendant–Appellant Grant T. Sugihara (Sugihara) from, *inter alia*, contacting his ex-wife and the two of their minor children (except for visitation) living with her, and coming or passing within one hundred yards of his ex-wife's residence.

3. Count I of the May 7, 2001 complaint charged Sugihara with the offense of abuse of family and household members. HRS § 709–906 (Supp. 2001). The State had alleged that Sugihara, while at his ex-wife's residence, threw an object that hit her in the right thumb. The jury found Sugihara not guilty of this charge.

4. This definition, and those that follow it, are taken verbatim from HRS § 702–206 (1993).

A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

(Footnotes supplied.) Sugihara did not object to this jury instruction at any time below—he did not object when the family court settled jury instructions (he in fact agreed to the instruction),[5] he did not object when the family court read this instruction to the jury, and he did not object when the family court had finished reading all of its instructions to the jury.[6]

## II. Standards of Review.

### A. *Plain Error.*

Because Sugihara failed to object to the jury instruction *sub judice*, he asserts plain error on appeal.

Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (West 2001) provides that, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Obversely, HRPP Rule 52(a) (West 2001) provides that, "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Specifically, HRPP Rule 30(f) (West 2001) provides, in pertinent part, that, "No party may assign as error the giving or the refusal to give, or the modification of, an instruction, . . . unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection." *See also State v. Corpuz*, 3 Haw.App. 206, 216, 646 P.2d 976, 983 (1982) (citing the predecessor rule to HRPP Rule 30(f)—"Rule 30(e), HRPP (1977)," then holding that, "Since the instruction was not prejudicial to the defendant and the defendant made no objection, he cannot now raise the question on appeal. *State v. Onishi*, 59 Haw. 384, 581 P.2d 763 (1978); *State v. McNulty*, 60 Haw. 259, 588 P.2d 438 (1978).").

"The general rule is that a reviewing court will not consider issues not raised before the trial court." *Corpuz*, 3 Haw.App. at 211, 646 P.2d at 980. "This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993) (citation omitted). "This court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Vanstory*, 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (brackets, citation and internal quotation marks omitted).

### B. *Jury Instructions.*

"The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Balanza*, 93 Hawai'i 279, 283, 1 P.3d 281, 285 (2000) (quotation [ (sic) ] and internal quotation marks omitted). "Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *State v. Sua*, 92 Hawai'i 61, 69, 987 P.2d 959, 967 (1999) (quoting *State v. Pinero*, 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) (quotation [ (sic) ] omitted)). In other words,

> error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real ques-

---

5.  Hawai'i Rules of Penal Procedure (HRPP) Rule 30(d) (West 2001) provides, in relevant part, that "any instructions prepared by the court . . . shall be reduced by the court to writing, and counsel shall be entitled to be heard thereon."

6.  HRPP Rule 30(f) (West 2001) provides, in relevant part: "Opportunity shall be given [the parties] to make . . . objection [to the court's jury instructions] out of the hearing of the jury . . . . after the court has instructed the jury."

tion becomes whether there is a reasonable possibility that error may have contributed to conviction.

*Id.* (quoting *State v. Heard,* 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted)).

Jury instructions "to which no objection has been made at trial will be reviewed only for plain error." *State v. Sawyer,* 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citing *Pinero,* 75 Haw. at 291–92, 859 P.2d at 1374). If the substantial rights of the defendant have been affected adversely, the error may be considered as plain error. *See id.*

*Aganon,* 97 Hawai'i at 302, 36 P.3d at 1272 (original brackets omitted).

### III. Discussion.

#### A. Aganon.

The relevant circumstances confronting the *Aganon* court were as follows:

After closing arguments, the circuit court instructed the jury on murder in the second degree:

The defendant is charged with the offense of Murder in the Second Degree. A person commits the offense of Murder in the Second Degree if she intentionally or knowingly causes the death of another person. There are two material elements of the offense of Murder in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

These two elements are[:] (1), that on or about the 21st day of October, 1997, to and including the 24th day of October, 1997, on the island of Oahu, in the City and County of Honolulu, State of Hawai'i, [Aganon] caused the death of Karie Canencia. And, (2), that [Aganon] did so intentionally or knowingly.

. . . .

A person acts intentionally with respect to her conduct when it is her conscious object to engage in such conduct.

A person acts intentionally with respect to attendant circumstances when she is aware of the existence of such circumstances or believes or hopes that they exist.

A person acts intentionally with respect to a result of her conduct when it is her conscious object to cause such a result.

A person acts knowingly with respect to her conduct when she is aware that her conduct is of that nature.

A person acts knowingly with respect to attendant circumstances when she is aware that such circumstances exist.

A person acts knowingly with respect to a result of her conduct when she is aware that it is practically certain that her conduct will cause such a result.

. . . .

During jury deliberation, the jury sent the following communication to the judge:

Regarding definitions of intentionally and knowingly in the instructions, three conditions/definitions are present for each word. Must all three be true, or is agreement with one of the three sufficient to be so defined?

With no objection from Aganon, the judge responded, "Unanimous agreement with one of the three is sufficient."

The jury found Aganon guilty as charged.

*Aganon,* 97 Hawai'i at 301–2, 36 P.3d at 1271–72 (brackets and former ellipsis in the original; footnote omitted).

On appeal and in pertinent part, Aganon contended the circuit court had plainly erred, because

(1) the jury instructions on second degree murder were plainly erroneous inasmuch as (a) they failed to set out that the elements are conduct and result, (b) they improperly claimed that state of mind is a material element, (c) they failed to require the jury to find that the state of mind applies to each element of the offense, and (d) they allowed the jury to conclude guilt without finding that Aganon committed each element of the offense with the requisite state of mind; [and] (2) its response to the jury communication was plain error because it allowed the jury to conclude guilt without finding that Aganon commit-

ted each element of the offense with the requisite state of mind[.]

*Id.* at 300, 36 P.3d at 1270. Taking up Aganon's point of error (2) first, the supreme court reasoned and held as follows:

Aganon argues that the circuit court failed to properly instruct the jury that, in order to find her guilty of second degree murder, it must unanimously find the requisite state of mind was present with respect to (1) her conduct, (2) the attendant circumstances, and (3) the result of her conduct. Instead, the court erred by informing the jury that it need only have "unanimous agreement with one of the three."

HRS § 701–114 (1993) specifies that "no person may be convicted of an offense unless ... [t]he state of mind required to establish *each element of the offense*" is proven beyond a reasonable doubt. (Emphasis added.) Similarly, HRS § 702–204 (1993) provides that "a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to *each element of the offense.*" (Emphasis added.) In turn, HRS § 702–205 (1993) identifies the elements of an offense to be:

such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:

(a) *Are specified by the definition of the offense,* and

(b) Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

(Emphasis added.) We note that not all offenses, as defined by the legislature, have all three possible elements. For example, we recently observed that prohibited possession of a firearm, in violation of HRS § 134–7(b) (1993 & Supp.2000), contains only the two elements of conduct and attendant circumstances. *See State v. Valentine,* 93 Hawai'i 199, 207, 998 P.2d 479, 487 (2000). In any event, the totality of these various items—the proscribed conduct, attendant circumstances, and the specified result of conduct, when specified by the definition of the offense, constitute

the "elements" of an offense. HRS § 702–205.

Pursuant to HRS § 707–701.5, a person commits the offense of murder in the second degree when the "person intentionally or knowingly causes the death of another person." Any voluntary act (e.g., physical abuse) or omission may satisfy the conduct element of the offense. The death of another person, as the intentional or knowing result of the conduct, constitutes the result element of the offense.

The circuit court's response to the jury's communication was erroneous. The jury, for example, could have found that Aganon possessed the requisite state of mind with respect to her conduct (physical abuse of Karie), but not with respect to the death that resulted. *See State v. Haanio,* 94 Hawai'i 405, 417, 16 P.3d 246, 258 (2001); *State v. Kupau,* 76 Hawai'i 387, 391–92, 879 P.2d 492, 496–97 (1994), *overruled on other grounds by Haanio,* 94 Hawai'i at 405, 16 P.3d at 246. By virtue of the circuit court's erroneous response to the jury's question, the jury could have found Aganon guilty of second degree murder, even though it did not find the requisite state of mind with respect to "each element of the offense." HRS § 702–204. Thus, the court's error adversely affected Aganon's substantial rights and, as such, constituted plain error. Accordingly, we vacate Aganon's conviction and sentence and remand for a new trial consistent with this opinion.

*Aganon,* 97 Hawai'i at 302–3, 36 P.3d at 1272–73 (emphases, brackets and ellipsis in the original).

The *Aganon* court did not, however, stop there. It went on to "examine Aganon's remaining arguments on appeal[,]" in order to "provide guidance to the circuit court on remand[.]" *Id.* at 303, 36 P.3d at 1273.

With respect to Aganon's first two points of error on appeal, points (1)(a) and (1)(b) quoted above, the supreme court prescribed as follows:

As discussed ..., the two elements of second degree murder in this case are "conduct" (Aganon intentionally or knowingly abused Karie) and "result" (Aganon

intended or knew that death would result). In this case, the circuit court incorrectly listed "conduct" and "result" together as one element. On remand, the elements of "conduct" and "result" should be separately listed. Although the circuit court erroneously listed the requisite state of mind as a "material element," contrary to HRS § 702–205, *see State v. Klinge,* 92 Hawai'i 577, 584 n. 3, 994 P.2d 509, 516 n. 3 (2000), the error did not adversely affect Aganon's substantial rights. The court's jury instructions were consonant with the spirit of HRS § 702–204, which prescribes that the requisite state of mind applies to each element of the offense. Thus, the jury instructions were substantively, if not technically, correct.

*Aganon,* 97 Hawai'i at 303, 36 P.3d at 1273.

As to Aganon's third and fourth points of error on appeal, points (1)(c) and (1)(d) quoted above, the supreme court reiterated:

Aganon's third and fourth arguments relate to the circuit court's allowing the jury to find Aganon guilty based on only one element of the offense so long as it was accompanied by the requisite state of mind. Given the jury's communication regarding the necessity of finding the state of mind with respect to all elements, we cannot say that the jury instructions did not adversely affect Aganon. Indeed, the jury demonstrated its confusion regarding the proper application of state of mind to the elements of the offense. Moreover, the circuit court, without objection from counsel, responded to the jury communication in a way that suggested confusion as to the correct application. Thus, the court's jury instructions were plainly erroneous.

*Id.* at 303–4, 36 P.3d at 1273–74.

*B. Sugihara's Appeal.*

Sugihara raises points of error in his appeal that mirror the pertinent points Aganon raised in her appeal, along with an additional fourth:

The trial court's instruction to the jury on the offense of Violation of an Order for Protection was plainly erroneous inasmuch as (1) the instruction improperly listed the state of mind as a separate element, (2) the instruction failed to separate the elements of "conduct" and "result," (3) the instruction failed to specify that the state of mind applied to all elements of the offense, and (4) the instruction improperly included notice as an element of the offense.

Opening Brief at 6.

With respect to his first point of error, Sugihara concedes that "listing the state of mind as a 'material element' is error, albeit not reversible error." Opening Brief at 8. *See also* Opening Brief at 14, 16–17. Because this error "did not adversely affect [Sugihara's] substantial rights[,]" *Aganon,* 97 Hawai'i at 303, 36 P.3d at 1273, we decline to notice it as plain error. *Id.* at 302, 36 P.3d at 1272; *Corpuz,* 3 Haw.App. at 216, 646 P.2d at 983; HRPP Rules 52(a) & 30(f).

On his second point of error, Sugihara contends the *Aganon* court "held that combining the 'conduct' element and the 'result' element as a single element is error." Opening Brief at 8. But we look to the *Aganon* court's further conclusion, that "the jury instructions were substantively, if not technically, correct" in this respect. *Aganon,* 97 Hawai'i at 303, 36 P.3d at 1273. And we notice Sugihara's concession that "failing to separate the elements of 'conduct' and 'result' might be viewed as [a] technical error[.]" Opening Brief at 16. The combination of conduct and result in a single element does not, in and of itself, portend prejudice. *Aganon,* 97 Hawai'i at 303, 36 P.3d at 1273. Hence, on Sugihara's second point of error, so cabined, we will not notice plain error. *Id.,* at 302, 36 P.3d at 1272; *Corpuz,* 3 Haw. App. at 216, 646 P.2d at 983; HRPP Rules 52(a) & 30(f).

Sugihara's first and second points are more genuinely implicated in connection with his third point of error because, clearly, Sugihara keeps his powder dry for this third point:

Pursuant to *Aganon,* the trial court's instruction on the elements of the offense of Violation of an Order for Protection, should have listed the conduct element and the result element[ ] separately and required that the state of mind applied to

each element. Accordingly, the instruction should have included the following elements: (1) On or about May 3rd, 2001, on the Island of O'ahu, the defendant intentionally or knowingly engaged in conduct prohibited by the order for protection (i.e., "conduct" element); and (2) The defendant acted intentionally or knowingly that his conduct would result in a violation of the order for protection (i.e., "result" element); and (3) The defendant acted knowingly that the order [f]or protection issued by a judge in the family court was in effect (i.e., "attendant circumstances" element).

Instead, the trial court utilized the Hawai'i Standard Jury Instructions—Criminal, which were flawed in several respects. First, the instruction on the elements of the offense of Violation of an Order for Protection listed the state of mind as a separate material element. Element No. 4 of the instruction stated, "That the defendant engaged in such conduct intentionally or knowingly."

Second, the instruction erroneously combined the two elements of "conduct" and "result" together as a single element under Element No. 3, which provided, "That the defendant engaged in conduct which was prohibited by the order for protection." The instruction should have listed "conduct" and "result" as separate elements.

Third and most significantly, the instruction failed to specify that the jury was required to find that the state of mind appl[ies] to each element of the offense. Elements Nos. 1, 2 and 3 of the instruction did not include a state of mind requirement. Moreover, Element No. 4 (the separate state of mind element) specifically instructed the jury that the culpable state of mind applied *only* to Element No. 3. The error was also compounded because, as mentioned above, Element No. 3 set out the "conduct" and "result" elements as one element; thus, the instruction never specified that the state of mind applied to "conduct" and to the "result of conduct." Such failure allowed the jury to conclude guilt without finding that Sugihara committed each element of the offense with the requisite state of mind.

Although the first two errors, listing the state of mind as a separate element and failing to separate the elements of "conduct" and "result" might be viewed as technical errors, the court's failure to specify that the state of mind applied to both the "conduct" element and the "result" element constituted plain error. *See Aganon*, [97 Hawai'i at 304, 36 P.3d at 1274].

. . . .

The instructions defining state of mind with respect to the elements of the offense neither cured the error of the instruction on Violation of an Order for Protection nor rendered the instruction sufficient on the law of Violation of an Order for Protection.

The definitions provided to the jury were simply definitions. The definitions failed to instruct as to whether, or how, they are to be applied. Furthermore, these definitions were given in terms of "conduct," attendant circumstances" and "result." The instruction on Violation of an Order for Protection did not use the terms "conduct," "attendant circumstances" or "result." Rather, the material elements, as given by the trial court were (1) the defendant engaged in conduct . . .; and (2) intentionally or knowingly. Given the foregoing, there was no bridging between the application of the definitions of the states of mind and the Violation of an Order for Protection instruction.

Finally, assuming the jury, without instruction from the court, applied the definitions to the instruction on the elements of the offense of Violation of an Order for Protection, their application did not cure the error in the Violation of an Order for Protection instruction because the jury was not provided with an instruction requiring it to find that the state of mind has been proven with respect to both the conduct and result element of the offense.

Opening Brief at 15–17, 19–20 (citations to the record omitted; bold emphasis in the original).

██ We disagree that Sugihara was prejudiced in any respect. The prejudice painted by Sugihara is a variety of *trompe l'oeil* commonly induced by the tunnel vision typical of token formalism. In the clear light of

common sense, we can easily see that in the family court's instruction, the "said conduct" that Sugihara had to have "engaged in ... intentionally or knowingly" was "conduct which was prohibited by the Order for Protection." Not only was the requisite state of mind thus established with respect to conduct prohibited by the order for protection, but axiomatically also with respect to conduct that violated an order for protection then in effect.

Sugihara cites, Opening Brief at 17, and we acknowledge, the *Aganon* court's statement that "the court's jury instructions were plainly erroneous." *Aganon*, 97 Hawai'i at 304, 36 P.3d at 1274. This statement was made, however, (1) in connection with "Aganon's third and fourth arguments [that] relate to *the circuit court's allowing the jury* to find Aganon guilty based on only one element of the offense so long as it was accompanied by the requisite state of mind[,]" *id.* at 303, 36 P.3d at 1273 (emphasis supplied); (2) upon discussion of the *Aganon* jury's express communication of confusion and the circuit court's misleading message in response, *id.* at 303–4, 36 P.3d at 1273–74; and (3) after the supreme court had already held that "the circuit court's erroneous response to the jury's question .... adversely affected Aganon's substantial rights and, as such, constituted plain error." *Id.* at 303, 36 P.3d at 1273.

We are also mindful of the general rule that "erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *Id.* at 302, 36 P.3d at 1272 (brackets, internal quotation marks and citation omitted). And we are not aware of any express exception for jury instructions that are "substantively, if not technically, correct." *Id.* at 303, 36 P.3d at 1273. But we are confident that this presumption, if applicable here, was rebutted by the logical connotations that ineluctably flow from the plain and simple language of the jury instruction.

In sum, Sugihara's third point of error fails to show that he was in any wise prejudiced, and hence, we do not recognize plain error in this point of error. *Id.,* at 302, 36 P.3d at 1272; *Corpuz*, 3 Haw.App. at 216, 646 P.2d at 983; HRPP Rules 52(a) & 30(f).

For his fourth and final point of error, Sugihara asserts that notice of the order for protection was improperly included in the jury instruction as an element of the offense. Because the inclusion added to the elemental burden of proof of the State, Sugihara could not have been prejudiced, and we cannot see plain error in this final respect. *Aganon*, 97 Hawai'i at 302, 36 P.3d at 1272; *Corpuz*, 3 Haw.App. at 216, 646 P.2d at 983; HRPP Rules 52(a) & 30(f). In any event, Sugihara's supporting argument, that "[t]he separate notice element implied that the state of mind requirement [with respect to Sugihara's conduct and the result of his conduct] will be satisfied if the State simply proved that Sugihara was properly served or that he attended the hearing in which the order was issued[,]" Opening Brief at 18, is wholly speculative and, when read in context of the instruction as a whole, very far-fetched.

## IV. Conclusion.

All in all, "[t]he [family] court's jury instruction [was] consonant with the spirit of HRS § 702-204, which prescribes that the requisite state of mind applies to each element of the offense. Thus, the jury instruction[was] substantively, if not technically, correct[,]" and there was no prejudice to Sugihara in any respect. *Aganon*, 97 Hawai'i at 303, 36 P.3d at 1273. "Since the instruction was not prejudicial to [Sugihara] and [he] made no objection, .he cannot now raise the question on appeal." *Corpuz*, 3 Haw.App. at 216, 646 P.2d at 983 (citations omitted).

In connection with the foregoing plain error analysis, we note that Sugihara's jury trial took place before the supreme court issued its *Aganon* opinion. Sugihara's trial counsel therefore lacked benefit of the insights of *Aganon* in making her objections at trial. At the same time, however, we observe that the *Aganon* court based its reasoning almost entirely upon statutes long extant and easily explicable at the time of Sugihara's trial. *Aganon*, 97 Hawai'i at 302–

3, 36 P.3d at 1272–73. At any rate, even if we abstain from applying the plain error doctrine against Sugihara, he is nonetheless constrained by an utter lack of prejudice, such that we cannot say there was "a reasonable possibility that error may have contributed to conviction." *Id.* at 302, 36 P.3d at 1272 (citation and internal block quote format omitted).

The August 31, 2001 judgment of the family court is affirmed.