**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000734
07-JUL-2021
07:49 AM
Dkt. 50 MO**

NO. CAAP-18-0000734

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
KAHAMAIOKUMOAE AHSING, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL CASE NO. 1PC151001824)

**MEMORANDUM OPINION**
(By:  Leonard, Presiding Judge, Hiraoka and Nakasone, JJ.)

Defendant-Appellant Kahamaiokumoae **Ahsing** (sometimes, **Kahamai**) appeals from the "Amended Judgment of Conviction and Probation Sentence" (**Amended Judgment**) entered by the Circuit Court of the First Circuit on September 26, 2018.[1]  For the reasons explained below, we affirm the Amended Judgment.

On November 19, 2015, Ahsing was indicted by a grand jury for: assault against a law enforcement officer (Officer Dannan **Smith**) in the first degree (**Count 1**); assault against a law enforcement officer (Officer Kathleen **Cruz**) in the first degree (**Count 2**); and criminal property damage in the third degree (to property of Officer Leonardo **Juarez**) (**Count 3**).

On May 17, 2017, a jury returned a verdict of not guilty on Count 1, guilty as charged on Count 2, and guilty of the lesser-included offense of criminal property damage in the fourth degree on Count 3.  A judgment was entered on August 28,

---

[1]      The Honorable Rom A. Trader presided.

2018.[2]  The Amended Judgment was entered on September 26, 2018, to correct a clerical error in the name of the recipient of restitution.  This appeal followed.

Ahsing contends: **(1)** "The Circuit Court erred in permitting Officer Juarez to testify that the clarity of the Taser video images lost clarity upon being downloaded and that the original video showed Ahsing throwing the chair"; and **(2)** "The Trial Court Erred in Denying Ahsing's Motion for Judgment of Acquittal."

## TRIAL PROCEEDINGS

The State's first trial witness was Honolulu Police Department (**HPD**) officer Juarez.  Officer Juarez was on duty on June 21, 2015.  At 10:45 p.m. he responded to a call about an argument.  The scene was a house surrounded by a fence.  When he arrived at the scene he saw four males in the driveway of the house.  One of the males was Ahsing.  According to Officer Juarez, another male (Ahsing's father, **Clayton**) "was screaming and yelling, fuck you, fuck you, I got a gun, fuck you, shoot me."  Two other males (Ahsing and his younger brother, **Kaulupono** or **Kaulu**) "were yelling, what the fuck, what the fuck, fuck you, what the fuck.  Same thing, except he was -- the father was yelling he had a gun."

Officer Juarez called for backup.  HPD officers Smith, Cruz, and Kenneth **Fontes** soon arrived at the scene.  As the four police officers started approaching the house, Clayton "busted out through the gate.  The boys were trying to restrain him.  And he was just going wild, trying to come at me, coming towards us. He was getting wild."  Officer Juarez activated the camera on his Taser to record Clayton's aggressive demeanor.

Officer Juarez again activated the camera on his Taser "when [Ahsing] threw the chair at us."  Officer Juarez described State's Exhibits 6 and 7 as photographs of the metal folding chair thrown by Ahsing, on the ground next to a spent Taser

---

[2]     A Judgment of Acquittal as to Count 1 had been entered on May 17, 2017.

cartridge. Officer Juarez authenticated State's Exhibit 14 as the folding chair he saw Ahsing throw. Officer Juarez saw the chair hit Officer Smith and then hit Officer Cruz.

Officer Juarez shot the Taser at Ahsing after Ahsing threw the chair. The Taser prongs hit Ahsing, who fell down. Clayton got tangled in the Taser wires, severing the electrical connection. Ahsing then got up and ran away.

Officer Juarez reloaded his Taser and attempted to pursue Ahsing. When he turned back he saw Ahsing pounding on the back window of his police-subsidized vehicle with what looked like a rake. Officer Juarez ran to his vehicle; Ahsing dropped the rake and ran away. Officer Juarez authenticated photographs of the damage to his vehicle, and of the rake used by Ahsing to cause the damage, all of which were received in evidence.

Officer Juarez then authenticated State's Exhibits 11, 12, and 13 as CDs of his Taser videos. The CDs were received in evidence without objection. The videos were played for the jury. After State's Exhibit 12 was played, Officer Juarez described Ahsing throwing the chair and being Tased, with the Taser wires shown in the video, and Clayton getting tangled in the Taser wires.

On cross-examination, defense counsel replayed State's Exhibit 12 for the jury and asked Officer Juarez:

> Q. And at this point, Clayton is on the ground; right? Right? 8:53:49.
>
> A. I can't see it, sir. (Steps down from witness stand.)
>
> Q. White shirt?
>
> A. Yes, sir.
>
> **_Can I say something?_**
>
> THE COURT: No. Hold on. Wait until there's a question, and then you may respond.
>
> Q. (BY [DEPUTY PROSECUTING ATTORNEY]) So Clayton is on the ground?
>
> A. Yes.
>
> Q. And the Taser has deployed?

> A.      Yes.
>
> Q.      Okay.  And [Defendant Ahsing] is hit with the Taser; right?
>
> A.      Yes.
>
> Q.      And he goes down?
>
> A.      Yes, sir.
>
> Q.      And Clayton stands up; it's dislodged?
>
> A.      Yes, sir.
>
> Q.      And [Defendant Ahsing] runs out the back?
>
> A.      Yes, sir.

(Emphasis added.)

On redirect examination, the State asked Officer Juarez:

> Q.      Officer Juarez, as defense was playing State's Exhibit 12 to you --
>
> A.      Yes.
>
> Q.      -- at one point, there was something you wanted to clarify.
>
> A.      The clarity on the video, it's not as clear as when you -- when they downloaded it.  ***This TV is not -- the pixel is not as clear.***  When you see it on -- on the -- actually see the video, you can actually see him.
>
> [DEFENSE COUNSEL]:  Judge, we object.  And move to strike.

(Emphasis added.)

The circuit court called counsel to the bench.  The following exchange took place:

> THE COURT:  The basis of your objection?
>
> [DEFENSE COUNSEL]:  Something just seems wrong about this.  I mean, it's -- ***he's vouching for evidence that essentially doesn't exist.***
>
> And I'd like permission to ask if, number one, if he can use the Taser camera to actually show the video.  In other words, is there a screen where you can use it to show the video?  And if possible, maybe we can use that, if he's going to be saying there's something wrong with State's Exhibit 12.
>
> THE COURT:  Your legal objection is what?
>
> [DEFENSE COUNSEL]:  Is that -- it's not speculation.

But --

[DEPUTY PROSECUTING ATTORNEY]:  Judge, I don't see any best evidence rule here.

[DEFENSE COUNSEL]:  Yeah, I was going to say best evidence, but frankly speaking, just something seems wrong about this.

THE COURT:  At this point, I'm going to overrule the objection.

[DEPUTY PROSECUTING ATTORNEY]:  I'll move on.

THE COURT:  With that, the officer communicated that or was commenting that what you viewed in court isn't the -- as I took it, *it's not the recording itself, but it's the playback or display*.  And it was left unclear as to what was used to facilitate that playback.  I could be wrong, but I don't necessarily believe that Tasers have a video screen.

[DEFENSE COUNSEL]:  Okay.

THE COURT: If they do, I stand corrected.  But I would be surprised about that.  But certainly, you may be free to follow up as you feel appropriate.  But I'm going to overrule the objection.  Okay?  Thank you.

(Emphasis added.)  There was no further redirect on State's Exhibit 12.

On recross-examination, Ahsing's attorney asked follow-up questions about State's Exhibit 12:

> Q.    Does the Taser have a screen by which you can watch recorded --
>
> A.    No.
>
> Q.    Okay.  So you're saying that if we were to use -- if we use some other device to look at this data, it would be better?
>
> A.    Maybe a smaller screen on a computer.
>
> Q.    Do you admit that these images look like Kaulupono's throwing the chair?  Would you admit to that?
>
> A.    No.  Not that chair.
>
> Q.    Bear with me, Officer.
>
> (Video is played.)
>
> [DEFENSE COUNSEL]:  And, Judge, I'm playing [State's] Exhibit 12 again.
>
> Q.    (BY [DEFENSE COUNSEL]):  Okay.  And at, we're once again, 8:53:48. Officer, do you mind? (Gestures.)
>
> A.    (Steps down from the witness stand.)

Q.    Okay.  And all this happened, like, within a matter of a second or two; would that be fair?

A.    Yes.

Q.    Okay.

A.    About, yes, sir.

Q.    So who is on -- do you see the chair on the right-hand side of the screen?

A.    Yes, sir.

Q.    Okay.  Behind the chair, you see Kaulupono with no shirt on, with a dot, basically some type of reflection; is that fair to say?

A.    Yes, sir.  He's more to the right.

Q.    Yes, yes, to the right.  Thank you.

Mr. Ahsing is -- well, he's hunched over, isn't he, in the black?

A.    Which Ahsing?

Q.    I'm sorry.  Kahamai Ahsing.

A.    Like he's kind of --

Q.    He's not standing facing you, as is Kaulupono?

A.    I can't really tell right here.  I can see his face right here. (Indicates.)  That looks like his face.

Q.    But whatever it is, he's crouched down; right?  Right?  He doesn't have his hands in the air; right?  He's at least lower than Kaulupono's shoulders?

A.    Yes.

Q.    And it's actually Kaulupono with his arms raised, not above his head, but raised above his waist; correct?  Is that fair to say?

A.    To the side, yes.

Q.    Dad [Clayton] is down below in the white shirt; right?

A.    Yes.

Q.    And there Kaulupono is with his back to you?

A.    Yes.

Q.    Okay.  And that's like just a second later?

A.    About, yes, sir.

[DEFENSE COUNSEL]:  Okay.  Thank you.

Thank you, Officer.

The next witness was Officer Fontes. When he arrived at the scene he saw four males. They were yelling. Officer Fontes approached the driveway, where the males were located, with Officers Juarez, Cruz, and Smith. Two chairs were thrown at the police officers. The first was a dark-brown-colored folding metal chair, thrown by Ahsing. It landed on Officer Smith, and then hit Officer Cruz. The second chair was a blue chair, thrown by Kaulupono, that hit Officer Juarez. Officer Fontes identified State's Exhibit 14 as the chair thrown by Ahsing, and State's Exhibit 9 as the chair thrown by Kaulupono. Officer Fontes had never seen the Taser video.

The next witness was Officer Cruz. She was the fourth HPD officer to arrive at the scene. Ahsing was in the driveway with several other males. They were fighting. She approached the driveway with Officer Smith on her left. When she was about five feet away from Ahsing, Ahsing grabbed a brown folding chair and threw it at Officer Smith. She identified State's Exhibit 14 as the chair thrown by Ahsing. The top portion of the chair hit Officer Smith's right shoulder, then the legs of the chair hit Officer Cruz's right shoulder. Officer Cruz deflected the chair with her upper arm, or it would have hit her face. She felt pain that lasted for about a week. After Ahsing was Tased, Kaulupono threw a blue chair at the officers. Officer Cruz identified State's Exhibit 9 as the chair thrown by Kaulupono. Officer Cruz confirmed she had never seen the Taser video.

The State rested after Officer Cruz finished her testimony, without calling Officer Smith as a witness. Ahsing moved for a judgment of acquittal. The circuit court denied the motion.

Ahsing testified. On direct examination he explained the incident that happened on Father's Day.

> Q. Is it fair to say that there were issues in the household on that day?
>
> A. Yes. There was some issues with my mom. She's kind of doing stuff behind my dad's back, so that's how everything started. I guess she was on the phone talking to somebody else, and then my dad caught her.

Q.    Okay.

A.    And then that's how everything started.  He just blew up.  And . . .

Q.    Okay.

A.    I don't know.

Q.    Were you guys -- were you guys -- Father's Day, were you guys having beers in the garage?

A.    We were.  We was having such a good time, and then everything just happened.

Q.    Okay.  You saw the videos of when the police came?

A.    Yes, I did.

. . . .

Q.    Okay.  So later in the evening, can you tell us, like, what kind of -- how was your father behaving?

A.    He was good.  He was -- we was all having a good time.  And he was like -- he was regular.  He was having a good -- good day.  And then -- I don't know.

Q.    And then those things came up?

A.    Yeah.  And . . .

Q.    How did that affect him?

A.    He got kind of mad.  So I wasn't -- I wasn't trying to hurt anybody.  I was trying to get my dad in the yard so he doesn't get arrested or he doesn't get Tasered.  But I ended up getting all Tasered.  ***But as you can see in the video, I didn't throw any chairs***.  So I don't know.  I have no clue what they're seeing, like . . .

. . . .

Q.    You saw that second clip?

A.    Yes, I saw the second clip.

Q.    What is that showing?

A.    I was trying to get my dad out of the way again.  The officers came into the yard.  And they said that I threw the chair, but I don't know, ***inside the video, I no see me throwing no chair***.

Q.    Well, yeah, the video, ***let's just say the video speaks for itself***.

A.    ***Right***.

Q.    But you saw something fly through the air?

A.    Yeah, I guess that -- I don't know, like look like light.

Q.   Okay.

A.   I guess that was the chair, but I didn't -- I didn't throw it.

Q.   Who threw it?

A.   I guess my brother.  I don't know.  Everything happened so fast, that's why.  So I didn't even -- I was just trying to get out of the way, get my dad 'cause he kept going, kept going, getting more nuts.  And . . .

. . . .

Q.   All right.  Okay.  So you ran away from the police?

A.   Yes, 'cause I -- I was scared after I got Tasered.  So, you know, that wasn't a good feeling.  So that's why I was trying to get away.

Q.   Yeah.  Okay.

A.   I didn't -- I no understand why they did that, 'cause I didn't do anything.  That's the thing.  I just was trying to get my dad off -- you know, out of the way.

Q.   Okay.  Did you damage anybody's property that night?

A.   No, I didn't.  That's -- I did not.  I didn't damage nobody's car or . . .

Q.   All right.  Thank you.  Thank you, Kahamai.

A.   Thank you.

(Emphasis added.)

The defense rested without calling any other witnesses. Ahsing renewed his motion for judgment of acquittal.  The motion was denied.

In closing, the State argued:

So based on the testimony of the officers, [Ahsing] is guilty as charged.  So the only real question in this case for you to decide is, are the officers credible?  And the answer to that question is a resounding yes.

. . . .

And the defense may talk about State's 12, that clip of the Taser, and go into Officer Juarez's testimony, the cross-examination, and point to the video and say, okay, well, where do you see this chair?  But **the State's not saying this case is about that video, because it's not.  The video is what it is**.  What matters to you and which should carry a convincing force and what is sufficient to prove the facts at issue in this case is the officers' testimony and how it's corroborated by one another and by the rest of the evidence.

9

(Emphasis added.)

The defense argued:

Why would I come in on Monday and so boldly announce that the video shows Kaulu throwing the chair?  Why would I do that?  I did that because the video does show Kaulu throwing the chair.

Now, the judge -- the judge has made arrangements for you.  When you're in the jury deliberation room, there's going to be the video cart that was here earlier that we used on Monday with the officers.  ***The judge is also providing to you a laptop computer,***[3] and the laptop computer can play this DVD.  ***The laptop computer has -- how shall I say -- the ability to depict what happened in State's Exhibit Number 12***.  That's the second video.  ***The pixelation is smaller, the images clearer***.  And what that shows is that it's Kaulu throwing the chair at the officers.

. . . .

. . . [I]t's as simple as this: Take a close look at the video, State's Exhibit Number 12.  ***Please take a close look at the video using not the huge screen, but the laptop***, and look at the first second or two of that video.  You'll see that it's Kaulu that threw -- Kaulu, excuse me, that threw the chair.  Not Kahamai.

. . . .

That second clip shows Kaulu throwing the chair.  It is not Kahamai throwing the chair.  Please promise to take a close look at that, because ***the video itself establishes that he's innocent.  The video establishes, in legal terms, reasonable doubt***.

Now, you know, the Ahsing family, not proud about what happened on that Father's Day.  There was a lot of emotion.  You can tell there's a lot of emotion going on about what had happened between the parents there.  But the fact of the matter is that it was not Kahamai that threw that chair.

Look at the video, please.  A fair decision in this case is not guilty as far as the assault against the police officers.  Thank you.

(Emphasis added.)

---

[3]  The circuit court advised the jury, before deliberations began:

And the Court will be making available for you in the jury room the laptop that was mentioned earlier by -- I believe it was [defense counsel].  That particular laptop is what we describe as being scrubbed, so there's nothing else on there.  You can simply play the video clips.  If that's what you'd like to do, feel free to do that.

## DISCUSSION

### 1.    The circuit court did not err by overruling Ahsing's objection.

Ahsing argues that "[t]he testimony of Officer Juarez violated the best evidence rule set forth in HRE [Hawaii Rules of Evidence] Rule 1002 because the State was required to introduce the original images -- the best evidence of the [sic] whether or not the Taser video showed Ahsing throwing the chair."  Rule 1002 of the Hawaii Rules of Evidence provides:

> **Requirement of original**.  To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute.

"Whether evidence should have been admitted or excluded under the best evidence rule is a question of law that we review de novo."  In re "R" Children, No. 29541, 2009 WL 2778306, at *6 (Haw. App. Aug. 26, 2009) (mem.) (citing Kealoha v. Cty. of Hawaii, 74 Haw. 308, 319, 844 P.2d 670, 676 (1993) (observing analysis of the admissibility of documents under the best evidence rule involves a determination of whether the evidence fulfills the requirements of the evidence rules and is therefore a right/wrong standard of review)).

The testimony at issue related to the clarity of State's Exhibit 12, a compact disc containing video from Officer Juarez's Taser.  State's Exhibit 12 was admitted into evidence without objection during the State's case-in-chief.  Ahsing objected to Officer Juarez's testimony about what the video would show on a different viewing device, contending that Officer Juarez was "vouching for evidence that essentially doesn't exist."  Officer Juarez testified that the television in the courtroom "is not -- the pixel is not as clear."  Officer Juarez's testimony was that State's Exhibit 12 — admitted into evidence without objection — could be seen more clearly on a viewing device having more pixels; he was not testifying about a video that was not in evidence.  The circuit court recognized that "it's not the recording itself, but it's the playback or

11

display."  The circuit court did not err by overruling Ahsing's objection.

On recross-examination of Officer Juarez, Ahsing's counsel established that the Taser does not have a screen for viewing video.  He elicited testimony from Officer Juarez confirming that the video image might be clearer on "a smaller screen on a computer."  In closing argument, Ahsing's counsel told the jury:

> The judge is also providing to you a laptop computer, and the laptop computer can play this DVD.  ***The laptop computer has -- how shall I say -- the ability to depict what happened in State's Exhibit Number 12***.  That's the second video.  ***The pixelation is smaller, the images clearer***.  And what that shows is that it's Kaulu throwing the chair at the officers.
>
> . . . .
>
> . . . [I]t's as simple as this: Take a close look at the video, State's Exhibit Number 12.  Please take a close look at the video using not the huge screen, but the laptop, and look at the first second or two of that video.  You'll see that it's Kaulu that threw -- Kaulu, excuse me, that threw the chair.  Not Kahamai.

(Emphasis added.)  During deliberations, the jury had the opportunity to actually view State's Exhibit 12 on "a smaller screen on a computer[,]" to determine for itself what the Taser video showed.  There was no evidentiary error.

### 2.    The circuit court did not err by denying Ahsing's motion for judgment of acquittal.

"On appeal the test for the denial of a motion for judgment of acquittal is that applied to determine sufficiency of the evidence to support the conviction."  State v. Davalos, 113 Hawaiʻi 385, 389, 153 P.3d 456, 460 (2007) (citation omitted).  When reviewing the sufficiency of the evidence to support a conviction:

> Evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury.  The test on appeal is not

whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

State v. Kalaola, 124 Hawaiʻi 43, 49, 237 P.3d 1109, 1115 (2010) (cleaned up).

The jury acquitted Ahsing on Count 1 (assault on Officer Smith). As to Counts 2 (assault on Officer Cruz) and 3 (damage to Officer Juarez's property), there was substantial evidence to support the jury's findings of guilty as charged on Count 2 and guilty of the included offense of criminal property damage in the fourth degree on Count 3. The circuit court did not err by denying Ahsing's motion for judgment of acquittal on those counts.

## CONCLUSION

For the foregoing reasons, the Amended Judgment entered by the circuit court on September 26, 2018, is affirmed.

DATED: Honolulu, Hawaiʻi, July 7, 2021.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Walter J. Rodby,
for Defendant-Appellant.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge