153 P.3d 456

**STATE of Hawai'i, Respondent/Plaintiff–Appellee**

v.

**Hanin Deswyn DAVALOS, Petitioner/Defendant–Appellant**

and

**Patsy B. Kahaunaele, Defendant.**

No. 27270.

Supreme Court of Hawai'i.

Feb. 28, 2007.

Summer M.M. Kupau, Deputy Public Defender (Jon N. Ikenaga, Deputy Public Defender, on the application), for petitioner/defendant-appellant.

Stephen K. Tsushima, Deputy Prosecuting Attorney, City & County of Honolulu, for respondent/plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

Petitioner/Defendant–Appellant Hanin Deswyn Davalos (Petitioner) filed an application for writ of certiorari [1] on October 23, 2006, requesting that this court review the Summary Disposition Order (SDO) of the Intermediate Court of Appeals (the ICA),[2] affirming the April 4, 2005 judgment of the first circuit court (the court)[3] convicting Petitioner of promoting a dangerous drug in the second degree (PDD2), Hawai'i Revised Statutes (HRS) § 712–1242(1)(c) (1993).[4] Respondent/Plaintiff–Appellee State of Hawai'i (Respondent) did not file a response to Petitioner's application. On February 15, 2007, oral argument was held.

We hold that (1) there was substantial evidence upon which to conclude that Petitioner was a distributor of drugs, see HRS § 712–1240 (1993),[5] in violation of HRS

---

1. Pursuant to Hawai'i Revised Statutes (HRS) § 602–59 (Supp.2006), a party may appeal the decision of the intermediate appellate court (the ICA) only by an application to this court for a writ of certiorari. See HRS § 602–59(a). In determining whether to accept or reject the application for writ of certiorari, this court reviews the ICA decision for:
 (1) Grave errors of law or of fact; or
 (2) Obvious inconsistencies in the decision of the [ICA] with that of the supreme court, federal decisions, or its own decision,
 and the magnitude of such errors or inconsistencies dictating the need for further appeal. HRS § 602–59(b). The grant or denial of a petition for certiorari is discretionary with this court. See HRS § 602–59(a).

2. The Summary Disposition Order was issued by Chief Judge James S. Burns and Associate Judges John S.W. Lim and Craig H. Nakamura.

3. The Honorable Virginia Lea Crandall presided.

4. HRS § 712–1242(1)(c) stated as follows:
 (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:
 . . . .
 (c) *Distributes any dangerous drug in any amount.*
 (Emphasis added.)

5. HRS § 712–1240 states in pertinent part:
 "To distribute" means to sell, transfer, prescribe, give, or deliver to another, or to leave, barter, or exchange with another, or to offer or agree to do the same.

§ 712–1242(1), (2); (2) however, Petitioner was entitled to a procuring agent defense instruction inasmuch as (a) a jury instruction must be given on every defense if there is any support in the evidence "no matter how weak, inclusive or unsatisfactory the evidence may be," *State v. O'Daniel,* 62 Haw. 518, 527–28, 616 P.2d 1383, 1390 (1980); (b) a defendant's participation in the negotiation of a drug transaction or in the touching of the drugs or money involved does not in and of itself foreclose a procuring agent defense; (c) the determination of whether a defendant is considered to be an agent of the buyer is a factual question ordinarily for the fact finder; and (d) there was support in the evidence for a procuring agent defense in the instant case.

## I.

 Initially it may be observed that under the procuring agent defense, " 'one who acts merely as a procuring agent for the buyer is a principal in the purchase, not the sale, and, therefore, can be held liable only to the extent that the purchaser is held liable.' " *State v. Balanza,* 93 Hawai'i 279, 284, 1 P.3d 281, 286 (2000) (quoting *State v. Reed,* 77 Hawai'i 72, 79, 881 P.2d 1218, 1225 (1994)).[6] A buyer or the agent of the buyer cannot be convicted of distributing a dangerous drug, HRS § 712–1242(1)(c), since " 'to buy' [or to offer to buy] clearly falls outside the meaning of 'to distribute' as that term is defined in HRS § 712–1240." *State v. Aluli,* 78 Hawai'i 317, 323, 893 P.2d 168, 174 (1995)

On April 30, 2004, Petitioner was charged by complaint with PDD2, HRS § 712–1242(1)(c). The matters following were ad-

duced at trial. Officer Wilson Atud (Atud) related that on April 21, 2004, he was involved in an undercover operation at the Jack–in–the–Box restaurant in Wahiawā and had been given "buy money" to purchase illicit drugs. Atud testified that he approached Petitioner and asked, "You get?" or something to that effect which, according to Atud, is street vernacular for "figuring out if someone's got drugs to sell." Petitioner then asked, "How much?" and after Atud responded "$20," Petitioner instructed Atud to wait.

Petitioner saw codefendant Patsy Kahaunaele and asked if she had any drugs to sell. Kahaunaele replied that she had a "quarter gram [bag] for $30." Kahaunaele owed Petitioner $10, so Petitioner offered to contribute the $10 that Kahaunaele owed him with the $20 from Atud to purchase the $30 bag, to which Kahaunaele agreed. According to Atud, Petitioner returned and instructed Atud to follow him around the corner. Petitioner told the officer he knew somebody with a $30 bag and that he wanted $10 worth of drugs out of that bag. Atud and Petitioner agreed that the officer would "get the 20" and Petitioner would "get the 10" "breakdown of the bag."

Atud testified that Petitioner pointed out Kahaunaele. Atud handed the $20 bill to Petitioner, which Petitioner then passed to Kahaunaele. Kahaunaele then handed a napkin to Petitioner, which Petitioner passed to Atud. A ziploc packet of crystal methamphetamine was wrapped in the napkin.

Petitioner testified that after speaking to Kahaunaele, he returned to Atud and ex-

---

**6.** The procuring agent defense is not an affirmative defense. *See* HRS § 701–115(3) (1993) (explaining that "[a] defense is an affirmative defense if: (a) [i]t is specifically so designated by the [Hawai'i Penal] Code or another statute; or (b) [i]f the Code or another statute plainly requires the defendant to prove the defense by a preponderance of the evidence"). Hence, like all non-affirmative defenses, the prosecution must disprove the defense beyond a reasonable doubt. *See* Commentary to HRS § 701–115 (1993) (Explaining that the Hawai'i Penal Code "places an initial burden on the defendant to come forward with some credible evidence of facts constituting the defense, unless … those facts are supplied by the prosecution's witnesses. As to the burden of persuasion, … [i]n the case of defenses which

are not affirmative, the defendant need only raise a reasonable doubt as to the defendant's guilt.").

Thereafter, "the prosecution must prove beyond a reasonable doubt facts negativing the defense. The prosecution in fact does this when the jury believes its case and disbelieves the defense." *State v. Gabrillo,* 10 Haw.App. 448, 455, 877 P.2d 891, 894–95 (1994) (internal quotation marks, citation, and ellipses points omitted) (concluding that "[i]f affirmative defenses are not involved and the defendant introduces evidence of a defense, the defendant becomes 'entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt' " (quoting HRS § 701–115(2)(a))).

plained to him that he knew a person who was selling a $30 bag, but that he would put in $10 of his own money so that they could jointly purchase it. Atud agreed. When they walked over to Kahaunaele, Petitioner introduced Atud as "the person I'm putting in with." Atud gave Petitioner the $20, which he handed to Kahaunaele. Kahaunaele then handed the napkin containing the drugs to Petitioner, who passed it to Atud. As they were walking away, Petitioner testified that he asked Atud for his $10 worth of drugs. Atud told Petitioner to follow him to his car, where Petitioner was arrested.

At the close of the case of Respondent and at the close of evidence, the defense moved for judgments of acquittal, which were denied. During the settling of jury instructions, the defense proposed an instruction on the procuring agent defense. The court refused the instruction over objection. The jury found Petitioner guilty. On April 4, 2005, Petitioner was sentenced. On May 3, 2005, Petitioner filed his notice of appeal.

## II.

Before the ICA, Petitioner argued that (1) Respondent "failed to adduce sufficient evidence to prove that [Petitioner] knowingly distributed a dangerous drug as required by HRS § 712–1242(1)(c) because HRS § 712–1242(1)(c) does not proscribe the act of buying crystal methamphetamine" and (2) the "court reversibly erred by refusing to instruct the jury on the procuring agent defense."

The ICA affirmed the conviction, stating in its July 11, 2006 SDO as follows:

After a sedulous review of the record and the briefs submitted by the parties, and giving careful consideration to the arguments advanced and the issues raised by the parties, we resolve [Petitioner's] points of error on appeal as follows:

1. Evidence was adduced at trial sufficient to enable a person of reasonable caution to conclude that [Petitioner] transferred crystal methamphetamine to an undercover police officer on behalf of the seller . . . .

2. The circuit court did not err in refusing [Petitioner's] jury instruction on the procuring agent defense because the evidence adduced at trial did not prove only a sale.

SDO at 1, 2.

## III.

In his application Petitioner raises two questions:

1. Whether the ICA gravely erred in holding that there was sufficient evidence adduced at trial to enable a person of reasonable caution to conclude that [Petitioner] had distributed crystal methamphetamine to an undercover police officer on behalf of the seller?

2. Whether the ICA gravely erred in holding that the circuit court did not err in refusing [Petitioner's] jury instruction on the procuring agent defense, based on the ICA's determination that the evidence adduced at trial did not prove only sale?

## IV.

As to the first question Petitioner contends (1) "HRS § 712–1242(1)(c) states that a defendant commits the offense of promoting a dangerous drug in the second degree if the person knowingly '[d]istributes any dangerous drug in any amount' "; (2) " '[d]istribute' is defined as 'to sell, transfer, prescribe, give, or deliver to another, or to leave, barter, or exchange with another, or to offer or agree to do the same' "; (3) "the act of buying is not included in distributing," citing *Aluli*, 78 Hawai'i 317, 893 P.2d 168; (4) "[a]t the close of [Respondent's] case, [Respondent] contended that the 'hand-to-hand transfer' of the drugs from [Petitioner's] hand to Atud constituted the 'distribution' "; (5) "[h]owever, . . . no distribution occurs when drugs are physically transferred from one joint owner to another," (citing *State v. Moore*, 529 N.W.2d 264, 266 (Iowa 1995) (citing *United States v. Swiderski*, 548 F.2d 445 (2d Cir. 1977)); *People v. Edwards*, 39 Cal.3d 107, 216 Cal.Rptr. 397, 702 P.2d 555, 561 (1985) (en banc)); (6) "[Petitioner] was a joint purchaser of drugs with Atud . . . using the $20 cash from Atud and the $10 IOU he contributed"; and (7) "even Atud's testimony estab-

lishes that immediately after Kahaunaele gave the drugs to Atud, [Petitioner] asked for his $10 share." Hence, Petitioner maintains that "the ... court erred as a matter of law in denying [Petitioner's] motion for judgment of acquittal because the act of purchasing drugs does not constitute an act of distribution under HRS § 712–1242(1)(c)."

## V.

Respondent argues that (1) "Atud testified ... he asked [Petitioner] if he had any crystal methamphetamine to sell," [Petitioner] inquired, "How much?"; (2) "Atud handed [Petitioner] a twenty dollar bill, which [Petitioner] gave to Kahaunaele"; (3) "Kahaunaele then handed [Petitioner] a napkin containing the crystal methamphetamine, which he gave to [Atud]"; (4) "a juror could have reasonably inferred that [Petitioner] was the distributor or seller of the drugs." According to Respondent, "[Petitioner] participated in the negotiation of the purchase price and quantity, when he asked [Atud] how much he wanted[,] ... [he] subsequently proceeded to acquire the ... drugs and in the process physically handled both the money and the crystal methamphetamine[,] ... suggest[ing] that [Petitioner] was a partner with Kahaunaele[,]" and, "[a]s such, no reasonable juror could have found that [Petitioner] did not, at the very least, act on the seller's behalf."

## VI.

On appeal the test for the denial of a motion for judgment of acquittal is that applied to determine sufficiency of the evidence to support the conviction. *See State v. Okumura,* 78 Hawai'i 383, 403 n. 15, 894 P.2d 80, 100 n. 15 (1995) (stating that "[a]lthough different language is sometimes used to describe the standard of review when the denial of a motion for judgment of acquittal is appealed, the test on appeal is actually identical—if there was sufficient evidence to support the conviction, the motion for judgment of acquittal was properly denied; if there was insufficient evidence, the denial of the motion was error" (citation omitted)). "Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and pro-

bative value to enable a person of reasonable caution to support a conclusion." *State v. Aplaca,* 96 Hawai'i 17, 21, 25 P.3d 792, 796 (2001) (citations omitted). Viewing the evidence as stated above, *i.e.,* in a light most favorable to Respondent, and in full recognition of the trier of fact's role, it may be concluded that the evidence was sufficient to enable a reasonable juror to conclude guilt. *Id.* at 21, 25 P.3d at 796 (citations omitted). Inasmuch as there was evidence sufficient to convict Petitioner of PDD2, we consider whether there was trial error, as posited in Petitioner's second question. *See State v. Wallace,* 80 Hawai'i 382, 413, 910 P.2d 695, 726 (1996) (stating that "[r]eversal for trial error, as distinguished from evidentiary insufficiency, ... is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.,* ... incorrect instructions" (quoting *Burks v. United States,* 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978))).

## VII.

As to the second question, Petitioner argues that the court's refusal of the procuring agent defense instruction was error. Petitioner reasons that (1) "[t]he principle behind the procuring agent defense is that 'one who acts merely as a procuring agent for the buyer is a principal in the purchase, not the sale, and, therefore, can be held liable only to the extent that the purchaser is held liable[,]' *Balanza,* 93 Hawai'i at 285, 1 P.3d at 287"; (2) "[Petitioner] testified that he had been a joint purchaser of the drugs from Kahaunaele, not her agent"; (3) "it was Atud who approached [Petitioner] and solicited the purchase"; (4) "[Petitioner] said that he would try to find someone who was selling"; (5) "there was no evidence that [Petitioner] made any profit off of the sale or that he received a 'cut' from Kahaunaele"; (6) "Atud confirmed that [Petitioner] asked him, not Kahaunaele, for his $10 share of the drugs"; (7) "a reasonable juror could have concluded that [Petitioner] was not acting on behalf of the seller, Kahaunaele"; (8) under *O'Daniel,* 62 Haw. at 527, 616 P.2d at 1390, a defendant in a criminal case "is entitled to an instruc-

tion on every defense or theory of defense having any support in the evidence[.]"

As to the second question, Respondent maintained in its answering brief that: (1) " '[w]hen jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading' " (quoting *State v. Valentine*, 93 Hawai'i 199, 204, 998 P.2d 479, 484 (2000)) (citations omitted); (2) in *State v. Kim*, 71 Haw. 134, 136, 785 P.2d 941, 942 (1990), "the defendant ... admitted to accepting money from the agent and delivering a napkin which she knew 'maybe contained cocaine' " (brackets omitted); (3) in *Reed*, 77 at 75–77, 881 P.2d at 1221–23, "the defendant negotiated the terms of the deal with the undercover officer, took the officer's money, delivered the cocaine ..., and ... admitted to providing the officer with cocaine"; (4) in *Balanza*, 93 Hawai'i at 289, 1 P.3d at 287, "[this c]ourt opined that 'under the evidence adduced in *Kim* and *Reed*, a reasonable juror could have found that the defendants were, at a minimum, acting on behalf of the sellers" (brackets omitted); (5) in *Balanza*, in which this court deemed the evidence insufficient to convict, this court had noted that "the defendant 'did not participate in the negotiation of the purchase price and quantity, nor did he come into contact with the money or the drugs' " (quoting *Balanza*, 93 Hawai'i at 289–90, 1 P.3d at 287–88) (footnote omitted); (6) in this case Petitioner did participate in negotiations and delivery of the drugs and, thus, (7) "the [court's] instructions ... were not prejudicially insufficient, erroneous, inconsistent, or misleading."

## VIII.

The instruction requested by Petitioner was as follows:

It is a defense to Promoting a Dangerous Drug in the Second Degree that the defendant was merely acting as the procuring agent for the buyer.

A person who acts merely as a procuring agent for the buyer is a principal in the purchase, not the sale, and, therefore, can be held liable only to the extent that the purchaser is held liable.

If you find that the defendant was merely acting as the procuring agent for the buyer, then you must find the defendant not guilty of Promoting a Dangerous Drug in the Second degree.

According to Respondent, "[d]uring the settlement of jury instructions, ... [Petitioner] conceded he did come into physical contact with the money and the drugs in this case. [Respondent] maintained that the procuring agent defense was unavailable to [Petitioner] insofar as: (1) [Petitioner] and the undercover officer agreed on a price and quantity, and (2) [Petitioner] physically handled the money and the drugs." The court refused the instruction on such grounds:

THE COURT: Court refuses the instruction over the objection of [Petitioner] having reviewed *State v.[B]alanza* and the factors set forth therein and the facts of this case with respect to [Petitioner]—negotiated the purchase with respect to having determined the amount the officer wanted to purchase and what the seller had, and he was involved in those negotiations and did actually physically touch both the money and the drug.

Respondent asserts, again relying on *Balanza*, that "the evidence adduced at trial proved [Petitioner] participated in the distribution and/or sale of crystal methamphetamine.... [Petitioner] was, at a minimum, acting on behalf of Kahaunaele." Respondent argues that because

[Petitioner] ... proceeded to acquire the desired drugs and in the process, as in *Kim* and *Reed*, *physically handled both the money and the crystal methamphetamine* [,] ... no reasonable juror could have found that [Petitioner] did not, a the very least, act on the seller's behalf[ ] ... [and] the procuring agent defense was not available to [Petitioner].

(Emphasis in original.)

In opposition, Petitioner in his opening brief had maintained that "[Petitioner] was entitled to instructions on the procuring agent defense because a reasonable juror could have concluded that [Petitioner] merely acted to purchase drugs." Petitioner points

out that "in [*Balanza* ], the [c]ourt held, 'in the absence of a bill of particulars, where the evidence adduced at trial proves only a sale and a reasonable juror could find that the defendant did not act on the seller's behalf, the defendant is entitled to a jury instruction on the procuring agent defense.' " (Quoting *Balanza*, 93 Hawai'i at 288, 1 P.3d at 290.) Petitioner concedes that in *Balanza* this court said:

> Under the evidence adduced in *Kim* and *Reed*, a reasonable juror could have found that the defendants were, at a minimum, acting on behalf of the sellers. However in the present case, Balanza did not participate in the negotiation of the purchase price and quantity, nor did he come into physical contact with the money or the cocaine. Under these circumstances, the procuring agent defense should have been available to him.

(Quoting *Balanza*, 93 Hawai'i at 287, 1 P.3d at 290.) However, Petitioner argues that "evidence that [Petitioner] 'was involved in . . . negotiations and did actually physically touch both the money and the drug,' does not mean that a reasonable juror could not find that [Petitioner] was not acting on behalf of the seller and thus, was not grounds for depriving [Petitioner] of the defense." Petitioner maintains that the question is one of fact for the jury, citing the following:

> It is important to note that the determination of whether a defendant is considered to be an agent of the buyer is generally a question for the jury, not the judge. Therefore, as long as there is "some reasonable view of the evidence" that a defendant acted purely on behalf of a buyer of drugs, a judge is required to submit the agency defense to the jury in those jurisdictions accepting the defense.

(Quoting Scott W. Parker, *An Argument for Preserving the Agency Defense as Applied to Prosecutions for Unlawful Sale, Delivery,*

*and Possession of Drugs*, 66 Fordham L.Rev. 2649, 2657 (May 1998).) Within that framework Petitioner argues that negotiation and contact with the money and drugs would not be inconsistent with Petitioner acting as an agent for the buyer:

> The evidence showed that [Petitioner] physically handled the drugs and the money because he was acting as a buyer of drugs along with [Atud]. The issue of whether [Petitioner] negotiated the price and quantity on behalf of Kahaunaele should have been up to the jury as the trier of fact to decide, not the judge. A reasonable juror could have concluded that [Petitioner] did not act on the seller's behalf, and merely acted to purchase drugs.

## IX.

In *Balanza*, this court stated that in *Kim* and *Reed* "the respective trial courts were correct, *based on the evidence adduced at trial*, to refuse a procuring agent instruction." 93 Hawai'i at 287, 1 P.3d at 289 (emphasis added). According to this court, "[u]nder the evidence adduced in *Kim* and *Reed*, a reasonable juror could have found that the defendants were, at a minimum, acting on behalf of the sellers." *Id.* Referring to the facts in *Balanza*, it was said, "However, in the present case, Balanza did not participate in the negotiation of the purchase price and quantity, nor did he come into physical contact with the money or the cocaine. Under these circumstances, the procuring agent defense should have been available to him." *Id.* at 287–88, 1 P.3d at 289–90.

This court did state that "where the evidence adduced at trial proves only a sale and a reasonable juror could find that the defendant did not act on the seller's behalf, a defendant is entitled to a jury instruction on the procuring agent defense." *Id.* at 288, 1 P.3d at 290.[7] However, the holding referred

---

7. In its SDO the ICA affirmed the court "because the evidence adduced at trial did not prove *only* a sale." SDO at 2 (emphasis added). In *State v. Kelsey*, 58 Haw. 234, 239, 566 P.2d 1370, 1373 (1977), this court acknowledged that "appellant had acted not for himself, but for the undercover police officer in purchasing the cocaine [and] invoke[d] as a defense, the theory of the procur-

ing agent." It was nevertheless held that the procuring agent defense "would be inapplicable against a charge of knowingly and unlawfully *distributing* a dangerous drug in violation of Section 1242(1)(c) of the Code." *Id.* at 240, 566 P.2d at 1373 (emphasis added) (citation omitted).

Subsequently, *State v. Erickson*, 60 Haw. 8, 9, 586 P.2d 1022, 1023 (1978), indicated that where

to "these circumstances," making the outcome rest on the specific facts of each case. In analyzing *Kim* and *Reed*, this court also referred to "the evidence received at trial." *Id.* at 289, 1 P.3d at 291. Acting conscientiously, the court in the instant case apparently viewed the reference in *Balanza* to Balanza not participating in the negotiation of the transaction, or coming into contact with the money or the drugs as precluding the defense.

## X.

■ To clarify, the question of whether a defendant was acting on the seller's behalf or on the purchaser's behalf rests on the specific facts of the case. Generally these are questions of fact for the fact finder—in this case, for the jury. *See e.g., People v. McGhee*, 677 P.2d 419, 422 (Colo.Ct.App. 1983) (stating that "the jury, as the sole judge of credibility, must determine the validity of the procuring agent defense" (citing *People v. Smith*, 623 P.2d 404 (Colo.1981)));

*People v. Lam Lek Chong*, 45 N.Y.2d 64, 407 N.Y.S.2d 674, 379 N.E.2d 200, 206 (1978) (stating that "[t]he determination as to whether the defendant was [an agent of the buyer] is generally a factual question for the jury to resolve on the circumstances of the particular case"); *People v. Foskit*, 168 A.D.2d 961, 564 N.Y.S.2d 912, 913 (N.Y.App. Div.1990) (concluding that "[w]hether defendant was a seller of narcotics or merely a purchaser assisting a friend presented a factual issue for the jury to resolve under the circumstances of this case" (citing *People v. Scott*, 134 A.D.2d 379, 520 N.Y.S.2d 856 (1987))). But if the court refuses the instruction as to the procuring agent defense, the jury is precluded from determining such questions.

The evidence arguably conflicted as to whether Petitioner was acting on behalf of Atud and himself as buyers when he handed the drugs to Atud, or on behalf of Kahaunaele as an agent of the drug seller. At the

---

the prosecution had given a bill of particulars that "confined the State to proof that appellant 'offered or agreed to sell[,]' " "the State is limited to proving the particulars specified in the bill." (Citations omitted.) Recognizing that "to sell does not mean to buy and that one who acts as the agent of the buyer ... does not commit the offense of selling the drug[,]" *id.* at 10, 586 P.2d at 1024, this court concluded that because "the State was limited by the bill of particulars to proving a 'sale'," *id.* at 11, 586 P.2d 1022, "the 'procuring agent' defense which we held in [*Kelsey*], *supra* at 239, 566 P.2d at 1373, to be unavailable under a charge of distributing a drug is available to appellant[,]" *Erickson*, 60 Haw. at 10, 586 P.2d at 1024.

*Kim* confirmed that *Erickson* decided that in light of the bill of particulars, "the charge [of distribution] could not be proved by evidence of any act other than a sale" and, thus, this court "accept[ed] the procuring agent defense where a sale is charged[.]" However, in *Reed*, 77 Hawai'i at 79, 881 P.2d at 1225, it was said that "we held in *Kelsey* that the procuring agent defense, which negates *only a sale*, was inapplicable to a charge of distributing a dangerous drug." (Emphases omitted and emphasis added.) (Citation omitted.) *Reed* indicated that "the procuring agent defense becomes available only when a bill of particulars alleges that the defendant distributed a dangerous drug exclusively by selling it[.]" *Id.* at 80, 881 P.2d at 1226.

The view that the procuring agent defense was available only if the defendant was charged with a sale, however, was altered by *Aluli*. *Aluli* held that the term "to distribute in HRS § 712–1240 [(which included 'to sell')] did not include 'to

buy' or 'to offer to buy.' " *Aluli*, 78 Hawai'i at 323, 893 P.2d at 174. Because distribution in its various prescribed forms (including selling) did not include buying or offering to buy prohibited drugs, the purchase of such contraband was outside the scope of conduct falling within the definition of distribution. Consequently, the purchase of drugs, whether by the principal or the principal's agent (*i.e.*, the procuring agent), could be raised as a defense to a charge of distribution under HRS § 712–1240. In *Balanza*, this court reiterated that "[t]he procuring agent defense remains available where the defendant is charged with the sale of drugs[,]" 93 Hawai'i at 287, 1 P.3d at 289, and abrogated the requirement that a bill of particulars alleging a sale was a necessary prerequisite to the consideration of the defense at trial.

As reiterated in the text, *Balanza* did declare that "where the evidence adduced at trial proves only a sale and a reasonable juror could find that the defendant did not act on the seller's behalf, the defendant is entitled to a jury instruction on the procuring agent defense." *Id.* at 288, 1 P.3d at 290. That statement, in light of *Aluli*, was not a limitation on the consideration of the defense by the fact finder, but a vestige of the "sale" language stemming from the bill of particulars context in *Erickson* and reiterated in subsequent cases. Moreover, that the statement as to "only a sale" rested on the specific facts of *Balanza* is underscored by this court's observation that "the evidence adduced at trial proved only a sale[.]" *Id.*

least there was support in the evidence no matter how weak, inconclusive or unsatisfactory it may be thought to be, for the jury to find that "the [Petitioner] did not act on the seller's behalf" but on behalf of Atud and himself. *See State v. Locquiao,* 100 Hawai'i 195, 205, 58 P.3d 1242, 1252 (2002); *State v. McMillen,* 83 Hawai'i 264, 265, 925 P.2d 1088, 1089 (1996); *State v. Maelega,* 80 Hawai'i 172, 178–79, 907 P.2d 758, 764–65 (1995); *State v. Pinero,* 70 Haw. 509, 525, 778 P.2d 704, 715 (1989); *O'Daniel,* 62 Haw. at 527–28, 616 P.2d at 1390. For that reason it appears the instructions were "prejudicially insufficient." *Valentine,* 93 Hawai'i at 204, 998 P.2d at 484. Therefore, the court was wrong in refusing the procuring agent instruction and the ICA gravely erred in affirming the conviction.

## XI.

Based on the foregoing, the ICA's SDO is reversed, the court's April 4, 2005 judgment is vacated, and the case is remanded to the court for proceedings consistent with this opinion.

