Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000022
20-JUL-2021
07:55 AM
Dkt. 79 MO

NO. CAAP-17-0000022

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAII,
Plaintiff-Appellee,
v.
TODD FAUFATA,
Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-CR. NO. 16-1-1497)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Leonard and Nakasone, JJ)


        Defendant-Appellant Todd Faufata (**Faufata**) appeals from the Judgment of Conviction and Sentence and Notice of Entry as to Count #2 filed on December 23, 2016 in the Family Court of the First Circuit (**Family Court**).[1]  Following a jury trial, Faufata was convicted of Assault in the Third Degree (**Assault Third**), in violation of Hawaii Revised Statutes (**HRS**) § 707-712(1)(a) (2014).[2]

---

[1]     The Honorable Sherri L. Iha presided.

[2]     HRS § 707-712(1)(a) provides:

        **Assault in the third degree.**  (1) A person commits the offense of assault in the third degree if the person:

(continued...)

On appeal, Faufata contends that: (1) the Family Court erred in admitting a witness's cell phone video over Faufata's objection; (2) the Family Court committed plain error by failing to *sua sponte* instruct the jury on the Defense of Property; (3) the Family Court plainly erred in failing to instruct the jury on Mutual Affray as a mitigating defense to Assault Third; (4) the State committed prosecutorial misconduct during closing argument by "testifying to facts not in evidence;" (5) Faufata received ineffective assistance of counsel; and (6) the Family Court erroneously denied Faufata's Motion for Judgment of Acquittal (**MJOA**) and renewed MJOA.

For the reasons set forth below, we vacate and remand for a new trial due to instructional errors and the erroneous admission of evidence.

## I. BACKGROUND

This case arose out of a June 27, 2016 argument involving Faufata, his girlfriend Gaylyn Kahele (**Kahele**), and Kahele's sister Gaylyann Bajarin (**Bajarin**), that occurred at the apartment where Faufata and Kahele lived.

Faufata was charged with one count of Abuse of Family or Household Members (**Abuse**) under HRS § 709-906(1) and (5)(a) (2014) against Kahele, and Assault Third against Bajarin. The jury found Faufata not guilty of the Abuse charge and guilty of Assault Third against Bajarin.

On the day of the incident, Faufata and Kahele were arguing over Faufata's belief that Kahele was cheating on him with a female co-worker. Bajarin came to the apartment to pick up Kahele. Bajarin identified herself to Faufata, saying, "I'm

---

[2](...continued)

   (a) Intentionally, knowingly, or recklessly causes bodily injury to another person[.]

2

the dyke, kick my ass, come on." Bajarin testified that Faufata yelled obscenities at her in response, whereas Faufata testified that he walked towards her and calmly responded, "You fucking for real," before turning his back to her and walking away. Kahele and Bajarin left the apartment.

Around 10:00 a.m., Faufata sent a text message to Kahele stating, "All your shit will be out on the street," and a text message to Bajarin that read, "Cunt." Kahele and Bajarin immediately drove to the apartment. Upon arriving at a fence outside the apartment, Kahele observed many of her belongings along the fence.

Kahele entered the apartment and went to her and Faufata's shared bedroom. Kahele attempted to grab a green box belonging to Faufata. Kahele and Faufata scuffled over the green box; Kahele testified that she was hit from behind, while Faufata testified that he did not hit her. Kahele called out to Bajarin for help. Upon Bajarin's arrival, Kahele lost sight of Faufata and Bajarin because Faufata's mother (**Mother**) wrapped her cane around Kahele's neck and pulled, then used her hands to yank Kahele outside.

Bajarin testified that she heard Kahele yelling for her and ran into the apartment and into the bedroom. Bajarin tried to pull Kahele from Faufata; and put her hands in between Kahele and Faufata and pushed him against the wall. Bajarin admitted she hit Faufata first, but did so to get him away from Kahele. Faufata saw Kahele run out of the house. Bajarin testified that Faufata then hit her in the face, twice with a closed fist, once on each side of her face. Upon being hit by Faufata, Bajarin felt pain, staggered back, but was able to call 911. Photographs of Bajarin's injuries were admitted into evidence, showing swelling of her right side cheek and left temple, and a bruise over her right eye.

Faufata testified that he blocked a punch from Bajarin and told her, "[W]ho the hell are you, get the hell out of my house." Bajarin kept swinging at him, and he told her to "get the hell out of my house," before he hit her to stop her from hitting him. Faufata followed Bajarin outside because he was worried that Bajarin would attack Mother. Both Bajarin and Faufata testified that Faufata subdued Bajarin and held her to the ground until the police arrived. While on the ground, Bajarin started recording the scene with the video camera on her cell phone. Bajarin did not start recording until after Faufata pinned her down outside the house.

The Family Court held a hearing on Motions in Limine before trial. The Family Court granted Faufata's request to exclude "[a]ny history of documented and/or undocumented allegations of crimes of violence" or "drug use." The Family Court specifically held that evidence of drugs within the green box was inadmissible. Faufata objected to the State's introduction of the cell phone video recorded by Bajarin, and argued that the statements made in the video were prejudicial under Hawaiʻi Rules of Evidence (**HRE**) Rules 403 and 404(b), and contained hearsay. The Family Court ruled that a redacted version of the video would be allowed.

At trial, the cell phone video recorded by Bajarin was entered into evidence as State's Exhibit 12 (**Exhibit 12**) and played in open court over Faufata's objection.

## II. STANDARDS OF REVIEW

### A. Jury Instructions

When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. However, error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be

4

> entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

State v. Nichols, 111 Hawaiʻi 327, 334, 141 P.3d 974, 981 (2006) (brackets and internal citations omitted) (quoting State v. Gonsalves, 108 Hawaiʻi 289, 292-93, 119 P.3d 597, 600-01 (2005)).

### B.    Plain Error

Pursuant to Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 52(b), we may notice "[p]lain errors or defects affecting substantial rights ... although they were not brought to the attention of the court." State v. Engelby, 147 Hawaiʻi 222, 231-32, 465 P.3d 669, 678-79 (2020) (brackets in original) (quoting Nichols, 111 Hawaiʻi at 335, 141 P.3d at 982 (internal citation and quotation omitted)). "[E]rroneous jury instructions may be grounds for reversal despite counsel's failure to object at trial because it is ultimately the trial court that is responsible for ensuring that the jury is properly instructed." State v. Kikuta, 125 Hawaiʻi 78, 95, 253 P.3d 639, 656 (2011) (quoting Nichols, 111 Hawaiʻi at 335, 141 P.3d at 982) (brackets and internal quotation marks omitted). "[O]nce instructional error is demonstrated," the reviewing court will vacate the judgment "without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt." Id. (citations, brackets and internal quotation marks omitted).

### C.    Admissibility of Evidence

"When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard." State v. Williams, 147 Hawaiʻi 606, 613, 465 P.3d 1053, 1060 (2020) (quoting State v.

West, 95 Hawaiʻi 452, 456-57, 24 P.3d 648, 652-53 (2001) (citation omitted)).  "Evidentiary decisions based on HRE Rule 403, which require a 'judgment call' on the part of the trial court, are reviewed for an abuse of discretion."  Id. (quoting State v. Richie, 88 Hawaiʻi 19, 37, 960 P.2d 1227, 1245 (1998) (internal quotation marks, citations, and footnotes omitted)).  A trial court's HRE Rule 403 determination will only be set aside when it "exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant."  Id. (quoting Samson v. Nahulu, 136 Hawaiʻi 415, 425, 363 P.3d 263, 273 (2015) (internal quotation marks and citations omitted)).  Admissibility of the evidence under the hearsay rules is reviewed under the "right/wrong" standard. State v. Delos Santos, 124 Hawaiʻi 130, 136, 238 P.3d 162, 168 (2010).

### D.    Motion for Judgment of Acquittal

On appeal, "the test for the denial of a motion for judgment of acquittal is that applied to determine sufficiency of the evidence to support the conviction."  State v. Davalos, 113 Hawaiʻi 385, 389, 153 P.3d 456, 460 (2007) (citing State v. Okumura, 78 Hawaiʻi 383, 403 n.15, 894 P.2d 80, 100 n.15 (1995) ("[A]lthough different language is sometimes used to describe the standard of review when the denial of a motion for judgment of acquittal is appealed, the test on appeal is actually identical — if there was sufficient evidence to support the conviction, the motion for judgment of acquittal was properly denied; if there was sufficient evidence, the denial of the motion was error.")).

We review the sufficiency of evidence on appeal as follows:

> Evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury.  The test on appeal is not whether guilt is established beyond a reasonable doubt, but

whether there was substantial evidence to support the conclusion of the trier of fact.

Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

State v. Kalaola, 124 Hawaiʻi 43, 49, 237 P.3d 1109, 1115 (2010) (citations, brackets, and internal quotation marks omitted).

### III.    DISCUSSION

### A.    Defense of Property instruction

Faufata contends that the Family Court committed plain error by failing to *sua sponte* instruct the jury on the defense of use of force for the protection of property (**Defense of Property**) under HRS § 703-306 (2014).[3]  Faufata argues that while

---

[3]    HRS § 703-306(1) and (2) provide:

**Use of force for the protection of property.**  (1) The use of force upon or toward the person of another is justifiable when the actor believes that such force is immediately necessary:

(a)    To prevent the commission of criminal trespass or burglary in a building or upon real property in the actor's possession or in the possession of another person for whose protection the actor acts;

(b)    To prevent unlawful entry upon real property in the actor's possession or in the possession of another person for whose protection the actor acts; or

(c)    To prevent theft, criminal mischief, or any trespassory taking of tangible, movable property in the actor's possession or in the possession of another person for whose protection the actor acts.

(2)    The actor may in the circumstances specified in subsection (1) use such force as the actor believes is necessary to protect the threatened property, provided that the actor first requests the person against whom force is used to desist from the person's interference with the property, unless the actor believes that:

(a)    Such a request would be useless;

(b)    It would be dangerous to the actor or another person to make the request; or

(continued...)

7

defense counsel failed to request an instruction on the Defense of Property, the Family Court was still required to instruct the jury on Defense of Property because there was evidence supporting such an instruction. This contention has merit.

It is well-established that a defendant is entitled to an instruction on a defense having any support in the evidence, no matter how weak, unsatisfactory or inconclusive the evidence might have appeared to the court. Kikuta, 125 Hawaiʻi at 90, 253 P.3d at 651. In this case, the record contains evidence through the testimony of Kahele, Bajarin, and Faufata, of Faufata's belief that Kahele and Bajarin were taking his property. Faufata testified that the apartment lease was under his name only, and that Kahele only stayed there occasionally. Kahele admitted that she grabbed the green box in the bedroom that belonged to Faufata. Bajarin's action of jumping on Faufata's back and hitting him first as Kahele and Faufata struggled over the green box in the bedroom, would support Faufata's belief that Bajarin may be aiding Kahele's theft of his property.

The record also reflects evidence to support Faufata's belief that Bajarin was trespassing on his property. Bajarin testified that she heard Faufata yelling: "Who the fuck are you, what are you doing in my house, who the fuck are you, get out." Faufata testified that he repeatedly told Bajarin to "get the hell out of my house." On the 911 tape, Faufata and Mother are heard saying: "You don't belong here." On the cellphone video, Faufata tells Bajarin: "What are you doing on my step?" and "You don't belong here." Based on this record, under HRS § 703-306,

---

[3](...continued)
       (c)    Substantial harm would be done to the physical condition of the property which is sought to be protected before the request could effectively be made.

Hawaiʻi Standard Jury Instructions Criminal (**HAWJIC**) 7.18B contains the Defense of Property instruction, which will not be quoted here as it is lengthy.

there was evidence of Faufata's belief that he was entitled to use force to prevent the theft of his property and to prevent Bajarin's unpermitted entry into his residence, and thus, the Family Court was required to give a Defense of Property instruction.

The omission of the Defense of Property instruction was not harmless beyond a reasonable doubt. See Kikuta, 125 Hawai'i at 95, 253 P.3d at 656; State v. Yue, No. 29141, 2010 WL 3705983, at *3-4 (Haw. App. Sept. 23, 2010) (SDO) (finding plain error for trial court's failure to instruct on Defense of Property where this defense and self-defense were "central to the defense presentation at trial" and such error was not harmless beyond a reasonable doubt due to a reasonable possibility that the error contributed to the defendant's conviction). While there were factual disputes as to self-defense and the struggle between Faufata and Bajarin regarding who was hitting whom, the evidence reflected that the home and the green box belonged to Faufata. In closing argument, while conceding that Kahele grabbed Faufata's property, the prosecutor argued that there was no jury instruction that allowed Faufata to use force against Kahele to take back his box:

> Now, the defense keeps bringing up that box and it being his box. There's nothing in these instructions that gives someone the right to attack someone for property. There's nothing in these instructions that give that. Is there anything in here that says someone has the right to physically attack someone else for property? It's not in here.

This argument was contrary to Hawai'i law on the Defense of Property, regardless of whether it was included as an instruction or not. The State's argument wrongly implied that no law gave Faufata "the right" to use force against Kahele for taking Faufata's property, which was inaccurate. In light of this record, the omission of the Defense of Property instruction was harmful. See id.

### B.    Mutual Affray instruction

Faufata contends that the Family Court committed plain error by failing to *sua sponte* instruct the jury on the mitigating defense of Mutual Affray.[4]  Faufata argues that based on the evidence presented at trial, the jury could find that Faufata and Bajarin entered into the fight or scuffle by mutual consent.  This contention has merit.

"Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor."  HRS § 707-712(2).  Mutual Affray "is not a lesser included offense of Assault in the Third Degree," but is a "mitigating defense that reduces the offense of Assault in the Third Degree to a petty misdemeanor."  Kikuta, 125 Hawai'i at 96, 253 P.3d at 657 (citing HRS § 707-712(2)).  The Kikuta Court held that a trial court "must submit a mutual affray instruction to the jury where there is any evidence in the record that the injury was inflicted during the course of a fight or scuffle entered into by mutual consent, as indicated in HAWJIC 9.21."  Id. (footnote omitted).  "[C]onsent" includes implied consent.  Id.  Consent may be "inferred from one's conduct" or may be "implied from an individual's words, gestures, or conduct."  Id. (citations and internal quotation marks omitted).  The Kikuta Court determined, from its review of the conflicting testimonies of the defendant and complainant,

---

<sup>4</sup>     HAWJIC 9.21A provides:

> If you find that the prosecution has proven the offense of Assault in the Third Degree beyond a reasonable doubt, then you must also consider whether the fight or scuffle was entered into by mutual consent, whether expressly or by conduct.

> You must determine whether the prosecution has proven beyond a reasonable doubt that the fight or scuffle was not entered into by mutual consent.  This determination must be unanimous and is to be indicated by answering 'Yes' or 'No' on a special interrogatory that will be provided to you.

See HRS § 707-712(1)(a).

that "there was some evidence adduced from which Complainant's consent to affray may be implied" and thus, the Mutual Affray instruction should have been given.  Id.

In this case, the threshold warranting a Mutual Affray instruction, i.e. whether there is "any evidence in the record that the injury was inflicted during the course of a fight or scuffle entered into by mutual consent[,]" was met through the testimonies of both Bajarin and Faufata.  Id. at 95, 253 P.3d at 656 (emphasis added).  While Bajarin initially denied attacking Faufata, during redirect examination, she admitted she threw the first blow at Faufata.  She said he was pushing her away, and she was the one trying to hit him.  Bajarin testified that she had her phone in her right hand and "whacked" him on the head with it, and that's what pissed him off even more to where his fist came right over."  Bajarin further testified:  "And then when I got in the middle, that's when all hell broke loose, I just physically got into it trying to get him off her, trying to pull her away."  Bajarin also grabbed Mother's cane away from her and hit Faufata with it.

Faufata testified that, earlier that morning, Bajarin had challenged him to a fight, saying, "I'm the dyke, kick my ass, come on," three times.  Faufata claimed that when he was in the bedroom, Bajarin jumped on his back and she was grabbing and swinging at him multiple times.  Faufata hit her on the left side of her head with a closed fist, and hit her in the side, as she kept trying to fight him.  He was able to block all of her blows.  He kept yelling at her to "get out of his house."  Finally, in closing argument, the prosecutor described the encounter as a "scuffle."

Thus, the record contains evidence, *inter alia*, that Bajarin threw the first blow, Bajarin challenged Faufata to fight, and that they engaged in a physical altercation that the

prosecutor described as a "scuffle."  The Family Court was required to give a Mutual Affray instruction, and plainly erred in not doing so.  See id. at 96, 253 P.3d at 657.

### C.    Cell phone video

Faufata contends that the Family Court erred in admitting Bajarin's cell phone video, State's Exhibit 12, due to lack of relevance and because it was more prejudicial than probative.  Faufata also claims that the statements made by Bajarin after the police arrived did not qualify for admission under the excited utterance exception to the hearsay rule.  The following events are depicted in the six-and-a-half-minute (06:30) video:  Faufata, sitting on the ground with his right arm outstretched to hold Bajarin down, asks, "Who are you on my step?"  (0:00).  Bajarin says, "Makes us look good, and you look bad."  Faufata responds, "'Cause you don't belong here."  (0:07).  The video pans to Mother, who is bending over and holding Kahele, face down, on the ground with her arms.  Mother and Kahele exchange angry words.  Faufata says, "Who the fuck are you? Fucking dykes.  The lesbian (indiscernible)."  (0:12).  Kahele says, "TRO him, [Bajarin]," to which Mother replies, "TRO is on the third one!  The third one!"  (0:33).  At 0:55, a static noise is heard, the image jolts and disappears.  From this point, there is no image, and only audio is available.  Faufata is heard yelling, "What?  Fucking what?"  Other persons are yelling, then someone, in what sounds like Faufata's voice, says, "Injuries sustained."  (0:56).  Faufata yells, "Where you live!" and voices are heard swearing at each other.  The sounds of a police radio and a police officer's voice, are audible from 01:18.  From this point onward, Bajarin can be heard speaking with police officers, relating that Faufata and Mother had attacked her when she came to "save her sister" whom Faufata was "attacking . . . inside the house."  Bajarin is heard disputing Faufata's claim that Kahele did not live there.  At 2:15, the video image reappears showing

the parties now separated, with four police officers at the scene. Relevant to this appeal, Bajarin gives a detailed account of the argument between Faufata and Kahele, explains how and why Bajarin became involved, reports that Faufata hit, choked, and elbowed Bajarin, and that Faufata is a "chronic user[.]" (2:28-4:00).

Faufata contends that the video contained prejudicial statements by Bajarin in violation of HRE Rules 403 and 404(b). Faufata also contends that at about one minute, 18 seconds into the recording (01:18) when the police arrived on the scene, Bajarin's statements thereafter were narrative, "self-serving," hearsay statements that did not qualify for admission under the excited utterance exception, HRE Rule 803(b)(2). The Family Court did not specifically rule on these objections raised on appeal, but rather made a general ruling precluding the ending section of the complete video from being admitted, explaining that it was "precluding only the part from where the police officers goes and starts to question her," where Bajarin "starts blurting out he's a chronic[.]" The Family Court set the redaction point, from 6:30 onward, which was "way towards the end" of the unredacted video.

We address Faufata's contentions using the following chronological categories: the pre-police-arrival section of the video from 0:00 to 01:17, and the post-police-arrival section of the video from 01:18 to 6:30.

**Pre-police-arrival, 0:00 to 01:17**

Faufata specifically challenges two statements in the pre-police-arrival section of the video: (1) Faufata claims that Bajarin's statement to Faufata "Makes us look good, and you look bad." at 0:04, was not within the excited utterance hearsay exception, and (2) Faufata claims that Faufata saying "fucking dykes" and "lesbians" at 0:12 was prejudicial under HRE Rules 403 and 404.

As to Bajarin's statement of "Makes us look good, and you look bad." at 0:04, Faufata did not object to this statement at trial; it is waived in this appeal, and we do not address it. See HRE Rule 103(a)(1) (requiring timely objections and specific ground of objection); State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal . . . .").

As to Faufata's statements, "fucking dykes" and "lesbians" at 0:12, Faufata specifically objected to this part of the video during motions in limine as "prejudicial" because it would "incite emotions within the jury." On appeal, Faufata cites HRE Rule 403, arguing that "[t]here was very little relevance" for this evidence," and "[i]t only served to make [Faufata] seem angry and bigoted," and thus, "[a]ny minimal relevance was far outweighed by the unfair prejudice." Faufata claims that the video had minimal relevance, because the physical confrontation had ended at the point these statement were made.

Video of a crime scene may be admissible where the "principal purpose was to show the layout of the crime scene and the persons involved." Richie, 88 Hawaiʻi at 38, 960 P.2d at 1246. The first minute of the video shows Faufata holding Bajarin down on the porch and is consistent with the testimony regarding the conclusion of the physical altercation between Faufata and Bajarin. It shows Kahele being restrained by Mother. There are boxes and belongings around them. The video provides a view of the scene and the persons involved, in the immediate aftermath of the altercation between Bajarin and Faufata. The physical appearance and the demeanor of Bajarin, Faufata, Kahele, and Mother can be seen. The speech and tone of all of their voices can be heard. The video was probative of Faufata's state of mind, where the State had to prove Faufata committed assault against Bajarin with the required state of mind, and Faufata

14

denying the same.  Thus, this section of the video, from 0:00 until the point the police radio can be heard at 01:17, as a matter of law, had probative value and was relevant.  The record, however, does not reflect the Family Court's reasoning for admitting this evidence, including the Family Court's Rule 403 balancing of the probative value, if any, of the "dykes" and "lesbians" statements, against any unfair prejudice to Faufata.[5] See HRE Rule 403.  On remand, if the Family Court is again asked to address the admissibility of this section of the video under HRE Rule 403, the record should reflect the court's balancing of the HRE Rule 403 factors prior to admission of such evidence. See State v. Arakawa, 101 Hawaiʻi 26, 35, 61 P.3d 537, 546 (App. 2002) (no written findings or recitation of HRE Rule 403 formula required, as long as the record clearly reflects the trial court weighed the probative value against the danger of prejudice).

### Post-police-arrival, 01:18 to 6:30

In the post-police-arrival section of the video, at 01:18, the sounds of police arriving and a voice of a police officer are heard.  Faufata argued below that after the police had arrived, Bajarin "provide[d] a narrative of self-serving statements, hearsay statements" and these statements did "not qualify as a present sense impression or a spontaneous utterance"

---

[5]     The record reflects that the Family Court had no advance notice regarding the objections Faufata now raises on appeal, because Faufata orally raised these objections for the first time during the motions in limine hearing.  Trial defense counsel informed the court that he filed "boilerplate motions in limine" that did not specifically identify what the defense was objecting to.  The defense motion did not state what Faufata was seeking to exclude or redact from the cell phone video.  The prosecutor complained that the defense had not specifically identified what was prejudicial, even the day before, and the State was just told "there was prejudicial things."  The prosecutor asserted, "[T]here's nothing inside this motion in limine that says what exactly is redactable and should be redacted.  So I cannot redact something unless I know what -- what's going on.  I can't form an argument about what should be redacted unless I know exactly what he wants to redact." The Family Court stated that it had not seen the video at the point the attorneys made their initial arguments, and noted that these arguments were "not in [defense counsel's] motion in limine . . . ."  On remand, the defense should timely and specifically apprise the Family Court and opposing counsel of the disputed items of evidence.

because "this [wa]s already after the fact." On appeal, Faufata argues that two specific statements in this portion of the video were prejudicial: (1) Bajarin's statement at 1:41, that "This is the first time here [sic] to do anything about it[,]" implying that Faufata had abused Kahele before; and (2) Bajarin's statement at 3:42 calling Faufata "chronic" and "chronic user," claiming that Faufata was a heavy drug user. We first address Faufata's hearsay argument.

Under HRE Rule 803(b)(2), a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is an "excited utterance" not excluded by the hearsay rule. To qualify as an excited utterance, the proponent of a statement must establish that: "(1) a startling event or condition occurred; (2) the statement was made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement relates to the startling event or condition." State v. Machado, 109 Hawaiʻi 445, 451, 127 P.3d 941, 947 (2006) (citing HRE 803(b)(2)).

> The "ultimate question in these cases is 'whether the statement was the result of reflective thought or whether it was rather a spontaneous reaction to the exciting event.'" Machado, 109 Hawaiʻi at 451, 127 P.3d at 947 (quoting [State v. ]Moore, 82 Hawaiʻi [202,] 221, 921 P.2d [122,] 141 [(1996)]. The "time span between the 'startling event' and the statement to be admitted as an excited utterance" is a factor in the determination, but a short time period is not a foundational prerequisite. Id. (quoting Moore, 82 Hawaiʻi at 221, 921 P.2d at 141). "Other factors that courts often look to in determining whether a statement was the product of excitement include ... the nature of the event, the age of the declarant, the mental and physical condition of the declarant, the influences of intervening occurrences, and the nature and circumstances of the statement itself." Id. (citing Moore, 82 Hawaiʻi at 221, 921 P.2d at 141).

Delos Santos, 124 Hawaiʻi at 137, 238 P.3d at 169. Statements that are coherent, specific, and inclusive renditions of the

incident are considered to be statements of reflective thought. Id. at 139, 238 P.3d at 171.

In this case, Bajarin's statements after the police arrived, giving a detailed, coherent, timeline of events, were the product of reflective thought. Bajarin describes Faufata tossing Kahele's belongings outside, Faufata's offensive text message, the events inside the apartment, background details of Faufata's and Kahele's relationship, and Faufata's alleged drug use and prior abuse history. See id. Bajarin informs the officer that Kahele is on Faufata's rental contract and requests to press charges against Faufata. These statements were the product of reflective thought and constituted hearsay not subject to the excited utterance exception. See HRE Rules 802 and 803(b)(2). The Family Court erred in admitting the statements after the arrival of the police, from 01:18 onward. See Delos Santos, 124 Hawaiʻi at 136, 238 P.3d at 168. In light of our conclusion, it is not necessary to address Faufata's remaining arguments regarding the allegedly prejudicial statements in this section of the video.

**D.  Remaining points of error**

Because we vacate and remand for a new trial for the reasons set forth above, we do not reach Faufata's remaining contentions regarding prosecutorial misconduct and ineffective assistance of his trial counsel. As to the MJOA motions, viewing the evidence in the strongest light for the State, Bajarin's testimony that Faufata twice struck her in the face and photographs of Bajarin's injuries constituted substantial evidence to support a reasonable factfinder's conclusion of guilt beyond a reasonable doubt; and thus, the Family Court did not err in denying the motions. See Davalos, 113 Hawaiʻi at 389, 153 P.3d at 460.

17

## IV. CONCLUSION

For the foregoing reasons, we vacate the Judgment of Conviction and Sentence and Notice of Entry as to Count #2 filed on December 23, 2016 in the Family Court of the First Circuit, and remand for a new trial, consistent with this Memorandum Opinion.

DATED: Honolulu, Hawaiʻi, July 20, 2021.

On the briefs:

Dwight C.H. Lum
for Defendant-Appellant

Sonja P. McCullen
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge